**Lynne KOPLOVE and Jay S. Koplove, Appellants,**

v.

**FORD MOTOR COMPANY, Appellee.**

**No. 85–5771.**

United States Court of Appeals, Third Circuit.

Argued June 3, 1986.

Decided July 8, 1986.

Rehearing and Rehearing En Banc Denied Aug. 14, 1986.

Arnold Levin, Laurence S. Berman (Argued), Levin & Fishbein, Philadelphia, Pa., for appellants.

George Wilgus, III (Argued), Lenox, Giordano, Devlin, Delehey & Socey, Lawrenceville, N.J., for appellee.

Before GIBBONS, BECKER, and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge.

Plaintiffs-appellants Lynne and Jay Koplove appeal from the entry of summary judgment in favor of appellee Ford Motor Company. We affirm.

### I.

Plaintiffs commenced their action on November 14, 1984, claiming damages for injuries suffered in a December 20, 1982 auto accident, allegedly caused by deficiencies in their 1982 Ford Escort.

The record discloses almost no direct evidence regarding the cause of the accident. Plaintiff Lynne Koplove, the driver and sole occupant of the automobile at the time of the accident, suffers retrograde amnesia regarding the critical events. A single witness saw the vehicle swerve but did not know what caused it to lose control. Furthermore, plaintiffs turned the car over to their insurance company, which apparently disposed of it. No expert examination of the vehicle ever took place.

After plaintiffs filed their complaint, the court established a discovery schedule that required plaintiffs to provide defendant with all expert reports to be offered at trial by July 15, 1985. Plaintiffs served defendant with interrogatories and production of document requests on January 21 and February 11. Defendant also served discovery requests on plaintiffs.

In May, 1985, plaintiffs answered defendant's Interrogatories. Plaintiffs identified the vehicle's defect as the "sudden stalling, stumbling and loss of control caused by defects in the carberator (sic) of the vehicle, carberator jets and pertinent parts thereto." 540A. One week before the accident, plaintiff's vehicle had been serviced for stalling, poor gas mileage and throttle sticking. In reply to a request for the facts upon which plaintiffs would rely to establish a design defect that caused the accident, plaintiffs stated that they would:

rely on proof of stalling, carberator defects, loose carberator jets, defective wiring harnesses and other defects in pertinent parts thereto causing stalling. Plaintiff reserves the right to supplement this answer as Plaintiff receives discovery from defendant.

539A. In addition, plaintiffs indicated that they would rely on expert testimony.

On June 5, 1985, defendant moved for summary judgment. In response, plaintiffs, on June 13, filed a memorandum of law opposing summary judgment and a Rule 56(f) affidavit.[1] In their brief, plaintiffs pointed out that the July 15, 1985 deadline for expert information had not yet

---

**1.** Feb.R.Civ.Pro. 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

passed, and that defendant had not yet responded to plaintiffs' initial discovery requests. In their Rule 56(f) affidavit, plaintiffs averred that "the facts concerning the liability of defendant are virtually exclusively within the knowledge of the defendant," 48A, and that "until plaintiffs have an opportunity to take further discovery, they are not in a position to make any determination whatsoever concerning defendant's culpability." 48–49A.

On June 25, 1985, defendant submitted its responses to plaintiffs' discovery requests. Defendant objected to most of plaintiffs' sweeping questions regarding defects in the carburetor and power steering systems, taking the position that it could not offer more meaningful answers to the interrogatories "unless defendant receives a report from an expert on behalf of the plaintiff indicating some ... viable cause of the accident." Defendant stressed that it had "not had an opportunity to inspect ... [the] vehicle and has no knowledge where ... [the] vehicle is at the present time." 103A.

The district court granted summary judgment, without opinion, on August 16. Ten days later, plaintiffs filed a motion for reconsideration. They labeled defendant's responses to their discovery requests "meaningless," and set forth the results of their own independent investigation, which purportedly revealed evidence of a generic defect in 1982 Ford Escorts that causes accidents similar to the one in this case. Plaintiffs contended that, given more time, they could establish the cause of the accident through expert testimony that would compare the accident as it occurred to a hypothetical accident caused by the alleged generic defect. The papers submitted in support of the motion for reconsideration did not, however, include an expert analysis of the materials produced by plaintiffs' investigation.

The district court denied plaintiffs' motion for reconsideration on October 11. In its opinion, the court stated:

> In order for plaintiff to prevail in their products liability action, they must be able to demonstrate that the automobile was defective and that that defect was the proximate cause of the accident. Even if plaintiff is accorded the presumption that she was not negligent, it does not necessarily follow that the alleged product defect must have been the proximate cause of the accident. The fact is, that without plaintiff's testimony, without the car itself, and without any expert reports made prior to destruction of the car, we don't know—indeed cannot know—what caused the accident.

Supplemental Appendix at 3 (3SA).

Finally, the district court rejected plaintiffs' assertion that eyewitness and expert testimony could establish the cause of the accident. The problem with this argument, the district court found, was that "plaintiffs have failed to produce an expert who makes such a claim." 4SA. According to the established pretrial schedule, expert reports were due by July 15, 1985. Plaintiffs had neither produced an expert report by that date nor filed for an extension of time in which to come up with such a report. Consequently, the district court concluded, summary judgment had been properly granted.

## II.

Plaintiffs claim that the district court abused its discretion in failing to give them more time to produce expert testimony in light of their Rule 56(f) affidavit that discovery was still in progress. They further contend that genuine issues of material fact existed that precluded the district court from granting summary judgment.

 There can be little doubt that the evidence of record as of the date summary judgment was granted warranted that judgment. Plaintiffs conceded as much in their motion in opposition to defendant's motion for summary judgment, *see supra*, p. 17. Indeed, the record warranted summary judgment at the time of reconsideration as well. Plaintiffs had by that time still failed to submit expert analysis to support their theory of the accident. In the circum-

stances of this case, it is probably impossible for the plaintiffs to prove a causal connection between this accident and any "generic defects" that may exist in 1982 Escorts. Clearly, however, a rational jury could not find the defendant liable without some expert analysis of the available information which implicated it.

The only debatable question on this appeal is whether the district court's grant of summary judgment was premature. We hold that the district court did not abuse its discretion by failing to grant a continuance and, accordingly, that summary judgment was not premature.

When the district court granted summary judgment on August 16, 1985, the case was nine months old and the deadline for filing the reports of any trial experts had passed a month earlier with no expert having been even identified by plaintiffs. Their Rule 56(f) affidavit did not specify what discovery was needed or explain why it had not been previously secured. The record showed that plaintiffs had received discovery responses on June 25th and that no motion for an extension of the July 15th deadline for expert reports had been sought. And most importantly, the record on August 16th contained no explanation why plaintiffs had failed to file a motion to compel responses to discovery in sufficient time to enable them to meet their responsibilities under the court's scheduling order.

We believe that a party taking the position that nine months is an inadequate period in which to obtain and file an expert's report has an obligation to provide the court with a record which affirmatively demonstrates, with specificity, diligent efforts on his or her part and unusual circumstances which have frustrated those efforts. *See Burlington Coat Factory Wrhse. v. Esprit de Corp.*, 769 F.2d 919, 926 (2d Cir.1985) (Rule 56 affidavit must explain what facts are sought, what efforts have been made to obtain those facts, and why those efforts have been unsuccessful); *Walters v. Ocean Springs*, 626 F.2d 1317, 1321–22 (5th Cir.1980) (per curiam) (Movant under Rule 56(f) must have used discovery mechanisms in timely fashion); 10A C. Wright, A. Miller, M. Kane, Federal Practice and Procedure § 2741 at 553 (1983) ("[A] request for relief under Rule 56(f) is extremely unlikely to succeed when the party seeking the delay has failed to take advantage of discovery). To require less is to deprive trial judges of the ability to effectively manage the cases on their overcrowded dockets. As Rule 16 [2] recognizes, scheduling orders are at the heart of case management. If they can be disregarded without a specific showing of good cause, their utility will be severely impaired.

Given the record before the district court on August 16, 1985, we conclude that the trial judge's refusal to postpone consideration of defendant's summary judgment motion was well within the range of permissible discretion. Since the supplemental materials thereafter filed by plaintiffs provided neither an expert's opinion nor further explanation for the failure to file one, the same can be said for the decision to deny plaintiffs' motion for reconsideration. Accordingly, the judgment of the district court will be affirmed.

---

**2.** Fed.R.Civ.Pro. 16(b) provides:

Except in categories of actions exempted by district court rule as inappropriate, the judge, or a magistrate when authorized by district court rule, shall, after consulting with the attorneys for the parties and any unrepresented parties, by a scheduling conference ... enter a scheduling order..

\* \* \* \* \* \*

A schedule shall not be modified except by leave of the judge ... *upon a showing of good cause.* (Emphasis supplied.)