**HARRISON BEVERAGE CO., Plaintiff,**

v.

**DRIBECK IMPORTERS, INC., Defendant.**

**Civ. No. 88–2342(SSB).**

United States District Court, D. New Jersey.

Oct. 19, 1990.

Andrew S. Polito, Mattson, Madden & Polito, Newark, N.J., for plaintiff.

William J. Prout, Jr., Tompkins, McGuire & Wachenfeld, Newark, N.J., for defendant..

## ORDER

BROTMAN, District Judge.

This matter having come before the Court on defendant's appeal of Magistrate Jerome Simandle's September 21, 1990 order granting in part and denying in part defendant's request for leave to file an amended answer on short notice, and on plaintiff's cross-appeal of the same decision; and

After this Court's consideration of the submissions of both parties, the record before Magistrate Simandle, the transcript of

oral argument and Magistrate Simandle's opinion dated October 11, 1990; and

Finding that Magistrate Simandle's decision was neither clearly erroneous or contrary to law pursuant to 28 U.S.C. § 636(b)(1)(A), Fed.R.Civ.P. 72(a) and Local General Rule 40.D.4(a);

IT IS this 17th day of October, 1990 hereby

ORDERED that defendant's appeal is DENIED WITH PREJUDICE and plaintiff's cross-appeal is DENIED WITH PREJUDICE. Neither plaintiff nor defendant will be granted additional time for discovery on the statute of frauds or mitigation of damages defenses. The parties are further instructed to adhere to the expedited schedule for filing of dispositive motions as set forth in this Court's letter dated September 19, 1990.

No costs.

## OPINION

JEROME B. SIMANDLE, United States Magistrate Judge:

This matter is before the court upon motion of defendant, Dribeck Importers, Inc., [hereafter "Dribeck"] for leave to file an amended answer on short notice, in light of the October 1, 1990 trial date in this case. This amendment would seek to add six separate defenses: statute of frauds, waiver, laches, estoppel, failure to mitigate damages, and statute of limitations. Having reviewed all submissions and having heard the arguments of counsel on shortened notice on September 13, 1989, this motion will be granted in part and denied in part. This Opinion amplifies the oral reasons stated upon the record on September 13, 1990, as to which an appropriate Order was entered on September 21, 1990.

I. *Factual Background and Procedural History*

The complaint in this case was filed by plaintiff Harrison Beverage Co. [hereafter "Harrison"] in the Superior Court of New Jersey on April 21, 1988. Defendant Dribeck removed the matter to federal court on May 27, 1988, and thereafter Dribeck filed its answer on July 8, 1988.

In this action for breach of contract, Harrison claims that Dribeck breached its beer distributorship agreement when it failed to permit Harrison to distribute certain beer and when it terminated the business relationship between the parties effective April 1, 1988. Harrison alleges that Dribeck terminated the agreement or alternatively terminated a common law franchise, without good cause and without adequate notice. Harrison also alleges that Dribeck made false promises to induce Harrison to enter into a business relationship with Dribeck. Harrison seeks compensatory and punitive damages.

The Scheduling Conference in this case was convened on July 6, 1988, and pre-trial discovery was extended to December 6, 1988. [Scheduling Order filed July 14, 1988.] At a follow-up Discovery Conference on November 30, 1988, it was determined that pre-trial discovery would be extended to February 6, 1989. [Amended Scheduling Order, filed December 5, 1988.]

Upon request of counsel, pre-trial discovery was again extended to March 6, 1989. [Amended Scheduling Order, filed February 14, 1989.] Various discovery disputes had arisen and were resolved, and appropriate orders and protective orders were entered, as the record will reflect. The case was removed from the Arbitration Program by my Order filed March 21, 1989, and the date for submission of the Joint Final Pre–Trial Order was set for June 20, 1989 in that Order.

The case continued to be intensely litigated, and the Order of February 13, 1989 was again amended on March 29, 1989, setting the pre-trial discovery deadline for June 6, 1989.

Following that intensive period of discovery, Dribeck determined in June of 1989, fifteen months ago, that it wished to amend its answer to include additional separate defenses. Dribeck's counsel, by letter of June 21, 1989, sent a copy of Dribeck's proposed amended answer to Harrison's counsel. [Certification of Mr. Prout, dated August 16, 1990, at ¶ 6] Mr. Polito,

representing Harrison, indicated in June of 1989 that he would consider consenting to the proposed amendment after he reviewed his file, and that Mr. Prout told him that he would send a copy of the proposed amendment to Dribeck's answer and that if Polito did not in fact consent, he [Prout] would file a motion to amend the answer. [Certification of Andrew S. Polito, Esquire, dated September 10, 1990 at ¶ 8.] Mr. Prout, on behalf of Dribeck, does not dispute that Mr. Polito did not consent in June of 1989. Mr. Prout's letter of June 21, 1989, actually confirmed that understanding, stating, "If you do not consent to the amendments in writing within two weeks, I will take that as a refusal and will file a motion to amend the Answer pursuant to Fed.R.Civ.P. 15." [Prout letter dated June 21, 1989.]

Mr. Polito elected not to consent to defendant's proposed amendment, and on the basis of Mr. Prout's June 21, 1989 letter, he concluded that there was nothing else for him to do, and in fact he did not respond. He assumed that if defendant still desired to file an Amended Answer, it would file the appropriate motion. [Polito Certification at ¶ 9.]

An entire year passed without the subject being raised again, until June 25, 1990. On that day, Mark Farinella, Esquire, inquired on behalf of Mr. Prout whether Mr. Polito would consent to the amendment. [Polito Affidavit ¶ 10.] Mr. Polito made it clear in that conversation, and in his letter dated June 26, 1990, that he did not consent to such an amendment, and that he had assumed that Dribeck had abandoned its quest to amend. Thus, under any reasonable reading of this record, it was clear by mid-July, 1989 that consent to the proposed amended answer was not forthcoming.

Nonetheless, the present motion was not filed until August 23, 1990, and it was assigned a shortened return date of September 13, 1990, upon the eve of trial, scheduled for October 1, 1990.

The original trial date, May 21, 1990, had been converted to a settlement conference at the request of counsel. If the case was not resolved, the Honorable Stanley S. Brotman would set the new trial date. [See my letter of April 19, 1990] The trial date was adjourned based upon the representations of counsel that they believed that there was a prospect of settlement. In fact, unbeknownst to me, settlement discussions between the parties had been ongoing for months but had broken down before March of 1990, when "it became apparent that this matter would probably not be concluded by means of a settlement." [Certification of Mr. Prout, ¶ 8] Predictably, the settlement conference was utterly unproductive, and a new trial date was set for September 17, 1990.

After the exchange of correspondence on June 25 and 26, 1990, regarding defendant's desire to file a motion to amend the answer, nothing happened in this regard until August 21, 1990. The trial date had been changed on July 10, 1990 to October 1, 1990, with the Final Pre–Trial Conference to be convened on September 13, 1990. On August 21, my chambers received an emergency request for a telephone conference, at the request of defense counsel, who requested an expedited briefing schedule with respect to a proposed motion for leave to file an amended answer. The motion was permitted to be filed on short notice, returnable at the Final Pre–Trial Conference on September 13, 1990.

The defendant, which had not acted upon its June, 1989 intention to seek leave to amend its answer for fourteen months, suddenly, three weeks before the Final Pre–Trial Conference, sought leave to inject these new issues and, if the amendment were permitted, to file motions for summary judgment based upon the newly-asserted defenses. At the August 21 telephone conference, upon being informed by Mr. Farinella that the defendant was prepared to file its summary judgment motions on these new defenses if permitted to do so, I suggested that it would be useful for them to informally serve a copy of their proposed summary judgment motions upon plaintiff's counsel so that the bases for the proposed affirmative defenses could be ascertained. Another benefit of the informal service would have been to give earlier notice to the plaintiff regarding the need

for further discovery in order to address those motions. This informal procedure would also have provided a gauge by which to measure the prejudice caused by the belated assertion of affirmative defenses. The informal exchange was derived from the experimental motion practice of the Honorable Alfred J. Lechner of our court. Judge Lechner's practice requires counsel to exchange their dispositive motion briefs and, in fact, to complete the briefing process before the motion package is filed with the court. In any event, the defendant did not take up this court's suggestion and did not take advantage of the opportunity to provide earlier notice, and to demonstrate whether any further discovery would be needed to address the new issues.

On the day of the oral argument, Mr. Prout and Mr. Farinella submitted affidavits which disclosed, for the first time,[1] that counsel were claiming that their failure to act was due to inadvertence or misjudgment beginning in June of 1989. Mr. Prout stated that he did not learn until June 13, 1990, from a review of the file that the proposed amended answer, which had been prepared in June of 1989, had not been filed. Prout Certification at ¶ 7. He instructed Mr. Farinella to draft a brief in support of the present motion on June 25, 1990. Farinella Certification at ¶ 7. That brief was prepared on July 1, 1990, and it was reviewed, redrafted, and reworked over the course of the summer, until it was filed on August 22 in the present motion. Unfortunately, the inadvertence of counsel which had delayed the filing of the present motion from June of 1989 repeated itself in June of 1990, according to Mr. Prout's affidavit. Mr. Prout's September 13, 1990 Certification states: "Because of the presence of other pressing matters, it was not until early August that I returned a copy of the above-mentioned Brief to Mr. Farinella for revisions.... Any delay in connection with the instant Motion is *singularly* a product of, at most, inadvertence and/or

misjudgment; in no way was any delay an attempt to gain undue tactical advantage. Any acts or omissions on my part were *not* the product of bad faith." *Id.* at ¶¶ 6 and 8.

Upon this record, it is quite clear that plaintiff never consented or in any manner led defendant to believe that plaintiff would consent to the proposed amendment to defendant's Answer at any time since June 21, 1989. It was well understood that if plaintiff did not "consent to the amendments in writing within two weeks", defendant "will take that as a refusal" and would thereafter "file a motion to amend the answer pursuant to Fed.R.Civ.P. 15", as stated in Mr. Prout's letter, *supra.* Further, the reason given by defendant for the delay—that settlement discussions between the parties continued for several months and were discontinued "some time shortly prior to March 14, 1990 when it became apparent that this matter would probably not be concluded by means of a settlement," Prout Certification of August 22, 1990 at ¶ 8—is unsupported in the record. This litigation continued throughout that period and was the subject of repeated scheduling orders. One unresolved discovery dispute concerned only the discoverability of defendant's current financial condition and net worth as an aspect of punitive damages discovery, which was resolved in a Memorandum Order of March 14, 1990. During the series of conferences, telephone scheduling conferences, and determinations related to discovery and scheduling, from March 1990 through July 1990, there was no mention of any intention by defendant to amend its answer. In the meantime, defendant filed its motion for partial summary judgment on May 30, 1990, again in recognition that the pleadings were closed and trial was imminent.

It is also curious that, at defendant's request, the May 21, 1990 trial date was converted to a settlement conference, and this conference was itself adjourned, at de-

---

1. Defendant's original brief, supported by the Prout Certification of August 22, 1990, took the position that "[i]n the present case, the delay was justified by the activity of the parties in attempting to settle the matter," Defendant's

Brief at 18, in contrast to the case of *Leased Optical Dept. v. Opti–Center, Inc.,* 120 F.R.D. 476 (D.N.J.1988), where "the delay was due to the inadvertence of the movants' counsel," according to Defendant's Brief at 18.

fendant's request, until June 13, 1990. In hindsight, in light of Mr. Prout's Certification that (unbeknownst to the court) it had already become clear to the parties before March 14, 1990—two months earlier, that this matter would probably not be concluded by means of a settlement, *see* Prout Certification dated August 22, 1990 at ¶ 8, defendant used the prospect of settlement discussions as a means to gain a further delay of the trial. Against this background this motion is considered.

### Discussion of Law

Pursuant to Rule 15(a), Fed.R.Civ.P., leave to amend a pleading must be sought by the applicant, which has the burden of showing that justice requires the amendment. Leave to amend "shall freely be granted when justice so requires." Rule 15(a), Fed.R.Civ.P. An earlier formulation of this standard was articulated by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), which stated:

If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given'.

Thus, leave to amend may be denied where there is "undue delay, bad faith or dilatory motive ..., undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Ibid.* As restated by the Third Circuit in *Heyl & Patterson International, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir.1981), *cert. denied sub nom. F.D. Rich Housing of the Virgin Islands, Inc. v. Gov't of the Virgin Islands*, 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982):

The trial court's discretion under Rule 15, however, must be tempered by considerations of prejudice to the non-moving party, for undue prejudice is "the touchstone for the denial of leave to amend." *Cornell [ & Co., Inc. v. Occup. Safety and Health Review Comm'n,]* 573 F.2d [820,] 823 [ (3d Cir.1978) ].... In the absence of substantial or undue prejudice, denial must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment.

■ The occurrence of *undue* delay is a sufficient ground to deny an amendment. Although incidental delay alone is not a sufficient ground to deny a motion to amend, the movant must demonstrate that its delay in seeking to amend is "satisfactorily explained," *Leased Optical Departments v. Opti–Center, Inc.*, 120 F.R.D. 476, 478 (D.N.J.1988), *citing Rose Hall Limited v. Chase Manhattan Overseas Banking*, 93 F.R.D. 858, 865 (D.Del.1982).

■ Similarly, incidental prejudice to the opponent is not a sufficient basis for denial of an amendment; such prejudice becomes "undue" when the opponent shows it would be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered...." *Heyl & Patterson, supra*, at 426, *citing Deakyne v. Commissioners of Lewes*, 416 F.2d 290, 300 n. 19 (3d Cir.1969).

■ "Futility" of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue. With respect to a proposed amended complaint, "The trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss." *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). Thus, if the proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend. If a proposed amendment is not clearly futile, then denial of leave to amend is improper." 6 Wright, Miller &

Kane, *Federal Practice & Procedure* § 1487 at 637–642 (2d ed. 1990) [footnotes omitted]. This does not require the parties to engage in the equivalent of substantive motion practice upon the proposed new claim or defense; this does require, however, that the newly asserted defense appear to be sufficiently well-grounded in fact or law that it is not a frivolous pursuit.

■ An overlay upon this entire scheme, however, arises from the requirements of scheduling orders and adherence to their deadlines. Rule 16(b), added in 1983, requires the entry of scheduling orders governing among other things, motions to amend pleadings or to join new parties, the close of discovery, and the filing of motions. Those deadlines can only be extended for "good cause" pursuant to Rule 16(b). The attempted injection of new issues on the eve of trial, as in this case, necessarily implicates the scheduling orders entered in this case, to the extent that further discovery would be required, further dispositive motion practice would occur, and the Joint Final Pre–Trial Order would have to be amended to accommodate new developments.[2] To argue that there should be a liberal policy of freely permitting amendments is to ignore, in an old case such as this one, the purposes of case management and the scheduling orders which "are at the heart of case management." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir.1986). The 1983 amendments to the Federal Rules of Civil Procedure were enacted specifically to require "judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps." Fed.R.Civ.P. 16, Advisory Committee's Note on 1983 amendment. The modification of a scheduling order deadline requires "a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.*, note on Subdivision (b). The

careful scheme of reasonable framing and enforcement of scheduling orders for case management would thus be nullified if a party could inject amended pleadings upon a showing of less than good cause after scheduling deadlines have expired.

■ Overall, the defendant's explanation for delay in bringing this motion is unsatisfactory. Relying in the first instance upon the suggestion of settlement discussions and then relying upon the assertion—on the date this motion was heard—of inadvertence of counsel, the defendant has not satisfactorily explained the delay. This is most definitely not a motion in which any of defendant's six proposed new affirmative defenses arose from recent discovery in the case. Indeed, five of the affirmative defenses—statute of frauds, waiver, laches, estoppel, and statute of limitations—are enumerated in Rule 8(c), Fed.R.Civ.P., as affirmative defenses which were required to be pled in the answer. Typically, the availability of such defenses is apparent when the answer is filed. Nothing in defendant's present submissions suggests that the affirmative defenses only arose from information gained in subsequent discovery, and certainly not in recent discovery in any event. The proposed defense of failure to mitigate, on the other hand, is not a required affirmative defense; failure to mitigate has probably been part of this case and a matter of discovery and dispute between the parties, and it always remains plaintiff's burden in a contract case to show that it took appropriate steps to mitigate damages.

■ The prejudice to the opposing party is greater where the tardy amendment will require a reopening of discovery, and it is lessened when the new issue presents solely an issue of law to be determined upon application to the existing facts. For in-

**2.** The time for completing discovery expired July 15, 1990, having been extended from May 21, 1990 to address discrete discovery needs of the parties, none of which produced discovery giving rise to the present motion to amend. Although there was no explicit deadline for filing motions to amend, it was implicit that the pleadings were closed by the time that counsel

and the court conferred on April 18, 1990, and finalized the process for a final attempt at settlement and trial. April 18, 1990 was, of course, two years after the complaint was filed. The Joint Final Pre–Trial Order was submitted as required on September 13, 1990, based upon the pleadings then existing.

stance, in *Foman* itself, the amendment was permitted even though discovery had expired where the inclusion of the additional theory of *quantum meruit* would not have required any more discovery, 371 U.S. at 182, 83 S.Ct. at 230. Similarly, in *Heyl & Patterson* the proposed addition of affirmative defenses was permitted because "the amendments address solely legal issues and require minimal additional pretrial preparation." *Heyl & Patterson,* 663 F.2d at 426 n. 5.

In the present case, in light of the above standards and given the tardy filing of this motion, defendant has established that justice requires permitting amendment of the Answer to assert affirmative defenses only for statute of frauds and failure to mitigate damages. Both present issues which are largely implicated in this case in any event, and both issues lie within evidentiary determinations to be made at trial.

■ Under the statute of frauds, an oral agreement, as alleged by plaintiff herein, which is not reduced to writing, is unenforceable unless capable of performance within one year. 37 C.J.S. *Statute of Frauds* § 40 (1943). Plaintiff has already taken the position that the contract was not indefinite because it was subject to termination if plaintiff failed to timely pay its bills, had poor sales performance, or violated defendant's important marketing policies, for reasons set forth in opposing defendant's partial summary judgment motion in Plaintiff's Brief and in the Rule 12G Statement and the Certification of Mark Czyz, Esquire. These essential elements of the plaintiff's contractual claim have long been in dispute, and the applicability, if any, of the statute of frauds requires no further discovery. The lines are drawn for the application of law to determine whether the oral distributorship agreement was performable within one year and thus not within the statute of frauds. By permit-

ting this amendment, it is anticipated that defendant would file a prompt motion for summary judgment, returnable upon shortened notice on the October 1, 1990 trial date,[3] as defendant has indicated it is prepared to do.

■ Likewise, the defense that plaintiff failed to mitigate damages will be permitted by amendment. No further discovery is needed in this area, because plaintiff has maintained throughout this litigation that it was not able to obtain another line of beer to replace defendant's beer, and plaintiff's basis for this assertion has been probed. The issue is inherent in the facts, no new discovery is needed, and the issue is ripe for trial, so justice requires permitting the amendment, and the trial will not be delayed. Because mitigation has been the subject of previous discovery and motion practice, permitting this amendment merely makes explicit what had been implicit in the developing facts. The pleadings must be permitted to catch up with the facts where, as in the present case, no undue prejudice is visited upon the party opposing the amendment with respect to mitigation efforts.

■ The motion to amend will be denied with respect to waiver, laches, estoppel and statute of limitations. Waiver, laches and estoppel are equitable defenses for which defendant has supplied no basis. Defendant's proposed amended pleading, like defendant's supporting brief, suggests no basis for these defenses. If there is a basis, plaintiff would necessarily seek discovery in an effort to probe these defenses. No grounds suggest themselves from the facts already in the case, unlike the defenses of statute of frauds and failure to mitigate, above. The effort to assert these defenses appears as something of a make-weight. Moreover, these equitable defenses cause inequity to plaintiff arising from defendant's delay: discovery of defendant has

---

3. The October 1, 1990 trial date was adjourned at defendant's request on September 19, 1990, to permit an orderly appeal (and perhaps cross-appeal) from this determination made September 13th. As of September 13th, when this decision was placed upon the record, there was no reason why defendant could not have been re-quired to make its summary judgment motion, and plaintiff to respond, within the 18 days remaining to trial. Defendant's appeal, of course, frustrated even this possibility of concluding dispositive motion practice before the October 1, 1990 trial date.

been completed without reference to whatever it is that forms a basis for waiver, estoppel and laches, and the inequitable conduct of defendant should not be excused in order to then permit assertion of equitable defenses. For laches, in particular, it is inconceivable that defendant has suffered some prejudice from plaintiff's alleged delay in filing suit that didn't become apparent to defendant in 1988 when it filed its Answer. The assertion of a laches defense 25 months after issue was joined is curious indeed, and it can be understood as an attempt to further delay the trial with dubious defenses. In each instance with respect to the proposed new issues of waiver, laches and estoppel, the delay is insufficiently and inconsistently unexplained, no bases for the defenses are put forward, the prejudice to plaintiff from reopening discovery and postponing trial is clear, and these defenses are dubious at best, because of the absence of an articulated factual basis for them.

■ Finally, defendant's motion to amend its Answer to assert a statute of limitations defense will be denied. The statute of limitations is an affirmative defense that is waived if not asserted, although it may be the subject of an amended pleading where justice so requires. This action arises from the defendant's alleged breach of an oral promise, made in April of 1984, to make the plaintiff an exclusive distributor within three to four months, according to plaintiff's allegations. (See Joint Final Pre–Trial Order at 14–19.) Plaintiff allegedly began its distribution of defendant's beer in May of 1984, and it was terminated as a distributor effective April 1, 1988, when defendant granted an exclusive distributorship to a competitor of plaintiff. Plaintiff filed its complaint on April 21, 1988.

■ Defendant's counsel at oral argument stated that defendant wished to take the position that this case should be governed by the four-year statute of limitations under the Uniform Commercial Code, N.J.S.A. § 12A:2–725, which states in relevant part: "(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.... (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach...." Although there may be grave doubt about the applicability of the UCC to this contract, we can assume for purposes of this motion that § 12A:2–725 governs. The defendant has not shown how the alleged cause of action even arguably arose more than four years prior to April 21, 1988. The alleged breach occurred, if at all, at least subsequent to the time that the parties began their course of dealings in May 1984, plus the three-to-four month period of non-exclusive distributorship. Because the breach could not have occurred prior to April 21, 1984, this action can not be time-barred by N.J.S.A. § 12A:2–725, and the proposed amendment would be futile. No discovery or motion practice, if this amendment were allowed, could change this unavoidable conclusion based upon the undisputed chronology. Because this defense is frivolous, and in light of the overall considerations of delay above, the motion must be denied as to the new statute of limitations defense.

## CONCLUSION

For the foregoing reasons, the motion of defendant for leave to file an amended answer setting forth affirmative defenses has been *granted* as to statute of frauds and mitigation of damages and *denied* as to waiver, estoppel, laches and statute of limitations. The appropriate Order was entered September 21, 1990.