# In the United States Court of Federal Claims

No. 11-511C

Filed: June 13, 2013

```
**************************************
                                     *
SYSTEM FUELS, INC.,                  *
SYSTEM ENERGY RESOURCES, INC.,       *
SOUTH MISSISSIPPI ELECTRIC           *
POWER ASSOCIATION,                   *
                                     *          10 C.F.R. pt. 171 (Nuclear
        Plaintiffs,                  *              Regulatory Commission fees);
                                     *          RCFC 16(b)(4) (modification of
v.                                   *              scheduling orders).
                                     *
THE UNITED STATES,                   *
                                     *
        Defendant.                   *
                                     *
**************************************
```

## MEMORANDUM OPINION AND ORDER

On December 5, 2011, over eighteen months ago, Plaintiffs agreed to submit all expert reports to the Government by May 11, 2012. *See* Scheduling Order, Dec. 5, 2011, ECF No. 14. Subsequently, in *Consolidated Edison Co. v. United States*, 676 F.3d 1331 (Fed. Cir. 2012), the United States Court of Appeals for the Federal Circuit reversed a decision by the United States Court of Federal Claims awarding damages for "generic fees"[1] paid to the Nuclear Regulatory Commission ("NRC"), because the plaintiff failed to prove that the NRC's overall "generic" activity costs increased as a result of the Department of Energy ("DOE")'s breach of the Standard Contract or that DOE's breach caused the NRC to change its "generic" fee structure in 1999. *Id*. at 1340.

On April 16, 2013, Plaintiffs filed a Motion To Permit Designation Of An Additional Expert And Fact Witness And To Amend The Pre-Trial Schedule ("Pls. Mot."). Therein, Plaintiffs requested that the court allow Plaintiffs to designate Mr. Jesse Funches, a retired Chief Financial Officer of the NRC, as an expert and fact witness to meet the evidentiary deficiencies identified in *Consolidated Edison*. Pls. Mot. at 1, 4-6. On May 10, 2013, the Government filed a Response ("Gov't Resp."). On May 17, 2013, Plaintiffs filed a Reply ("Pls. Reply"). On May 21, 2013, the court convened a telephone conference to hear the parties' arguments ("5/21/13 TR at 1-22").

---

[1] "Generic fees" are defined as the fees that cover the costs of the NRC's general industry-wide regulatory activities, subject to 10 C.F.R. part 171.

RCFC 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." The United States Court of Appeals for the Federal Circuit has not had an occasion to address the parameters of RCFC 16(b)(4).[2] Other federal appellate courts, however, have provided guidance in the context of Fed. R. Civ. P. 16(b)(4) as to a trial court's discretion in modifying scheduling orders to allow additional expert witnesses.

The United States Court of Appeals for the Fifth Circuit has held that four factors should be considered by a trial court in determining whether "good cause" exists to modify a schedule under Fed. R. Civ. P. 16 to accommodate the designation of an additional expert witness: (1) the reasons for the moving party's failure to designate the witness in compliance with an existing schedule; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a cure for any prejudice. *See 1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1288 (5th Cir. 1991) (listing the factors); *see also Eichorn v. AT&T Corp.*, 484 F.3d 644, 651 (3d Cir. 2007) (affirming a trial court's ruling denying the addition of an expert witness, where the court considered the plaintiffs' "explanation for the lateness of their request, the prejudice that would result if it were granted or denied, and the extent to which the plaintiffs' [initial] decision to proceed without expert testimony was a deliberate one").

The first factor focuses on why a party failed to comply with a scheduled deadline. A party's realization that it elected to pursue the wrong litigation strategy is not good cause for amending a schedule. *See Eichorn*, 484 F.3d at 651 (approving a trial court's ruling that the deliberate nature of the plaintiffs' initial decision to proceed without expert testimony was not sufficient to show good cause). Although Plaintiffs in this case contend that *Consolidated Edison* was an "intervening development in the applicable case law," the court reads that decision simply to reaffirm a plaintiff's burden to establish causation in a breach of contract claim. *See Consol. Edison*, 676 F.3d at 1338-40 (analyzing the evidence of causation and finding it lacking). Plaintiffs' recent concern that their case may have evidentiary shortcomings, does not explain their failure to designate Mr. Funches as an expert in a timely manner.

Assuming, *arguendo*, that *Consolidated Edison* was an unforeseeable change in the law, that still does not excuse Plaintiffs' failure to comply with the December 5, 2011 Scheduling Order. The United States Court of Appeals for the Federal Circuit ruled in *Consolidated Edison* on April 16, 2012, a month before Plaintiffs' deadline for submitting their expert reports. Plaintiffs, however, waited a year before deciding they needed to add a witness. *Cf. Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986) ("We believe that a party taking the position that nine months is an inadequate period in which to obtain and file an expert's report has an obligation to provide the court with a record which affirmatively demonstrates, with specificity, diligent efforts on his or her part and unusual circumstances which have frustrated those efforts."). Moreover, instead of directly addressing this issue, Plaintiffs cite "the paucity of

---

[2] In *Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.*, 109 F.3d 739, 744 (Fed. Cir. 1997), the United States Court of Appeals for the Federal Circuit applied the law of the applicable regional circuit, *i.e.*, the United States Court of Appeals for the Fifth Circuit, regarding the trial court's discretion to modify scheduling orders to allow additional expert witnesses under Fed. R. Civ. P. 16(b)(4).

information regarding causation and the proper calculation of NRC fees attributable to the Government's breach that [spent nuclear fuel] plaintiffs have been able to extract from the Government through formal discovery." Pl. Reply at 3. In short, Plaintiffs blame the Government for their lack of diligence.

The second factor is the importance of the proposed testimony. In spent nuclear fuel cases, our appellate court has suggested two ways that a plaintiff can

> establish a causal link between DOE's breach and an increase in generic fees paid by [the plaintiff]: (1) that NRC's overall generic costs increased as a result of DOE's breach, causing the NRC to assess increased generic fees on each of its licensees; or (2) that a 1999 rule changed the fee allocation method as a result of DOE's breach and increased [the plaintiff's] share of generic fees.

*Consol. Edison*, 676 F.3d at 1339.

Plaintiffs insist that Mr. Funches is necessary to establish this causal link, because he "was directly involved in the decision to change the fees, and he was also involved in the computation of those fees on a going forward basis, and both of those issues have been the subject of dispute between the parties." 5/21/13 TR at 9 (Pls. Counsel). As to whether DOE's breach of the Standard Contract caused the NRC's overall "generic" costs to increase, the court sees little probative value in Mr. Funches's testimony. The NRC rules are issued by a five-member Commission appointed by the President and confirmed by the United States Senate. *See* 42 U.S.C. § 5841(a)-(b) (establishing the NRC and defining its composition). Mr. Funches was not the Chairman or even a Commissioner, and, as Chief Financial Officer, he had no authority to issue official interpretations of the reasoning behind the Commissioners' actions. *See* 10 C.F.R. § 1.31 (defining the CFO's duties). Of course, an agency's contemporaneous official published statements evidence an agency's reasoning. *See Consol. Edison*, 676 F.3d at 1338-39 (analyzing the text of NRC's FEDERAL REGISTER explanation of a proposed and final rule). In contrast, the United States Court of Appeals for the Federal Circuit has observed that *post hoc* assertions about an agency's decision-making inherently are suspect. *See Parker v. Office of Pers. Mgmt.*, 974 F.2d 164, 166 (Fed. Cir. 1992) (disregarding the *post hoc* affidavit of an agency officer who asserted that the agency had a long-standing policy of interpreting 5 C.F.R. § 831.501 as imposing a deadline for the agency's receipt of an application).

Mr. Funches's proposed testimony as to why the NRC's fees increased presents the same problem. As NRC's CFO, he was an advisor, not a decisionmaker. *See* 10 C.F.R. § 1.31(a) (stating that the CFO "[o]versees all financial management activities relating to NRC's programs and operations and provides advice to the Chairman on financial management matters"); *see also* 10 C.F.R. § 1.31(k) (the CFO "[r]eviews, on a periodic basis, fees and other charges imposed by NRC for services provided and makes recommendations for revising those charges, as appropriate"). Therefore, Mr. Funches's testimony, fourteen years after the rule change, would be neither contemporaneous nor official.

For these reasons, the court has determined that Mr. Funches's testimony would be hearsay and irrelevant since the reasons for the NRC's 1999 rule and subsequent changes are set forth in the FEDERAL REGISTER.

The third factor is prejudice to the non-moving party. To date, the Government has conducted substantial discovery based, in part, on the expert reports that Plaintiffs produced on May 11, 2012. Gov't Resp. at 11 n.9 ("The Government has already taken approximately 20 depositions in this case[.]"). If the court grants Plaintiffs' April 16, 2013 Motion, the Government would need to investigate Mr. Funches's assertions and might need to hire a new expert. Gov't Resp. at 11. The Government's expert report is due July 1, 2013, and all other discovery, including expert witness depositions, is to be completed no later than August 15, 2013. *See* Scheduling Order, Feb. 25, 2013, ECF No. 28 (establishing deadlines). For the reasons discussed herein, the court sees no reason to impose the burden of any additional discovery on the Government.

Finally, the fourth factor is the court's ability to cure any prejudice to the non-moving party. Although discovery deadlines can be extended, the court cannot compensate the Government for the added expense it would incur. *See, e.g.*, *Dag Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 110 (D.D.C. 2005) ("Compelling a party with 'clean hands' to incur significant additional expense and spend a large amount of additional time in discovery when the opposing side has not acted with diligence and has not shown 'good cause' is simply unwarranted."). Although Plaintiffs argue that the expense to the Government would be minimal, because the Government has access to Mr. Funches's expert reports in *Energy Northwest v. United States*, No. 11-447 and *Alabama Power Co. v. United States*, No. 08-237 (Pls. Reply at 5), that fact does not support Plaintiffs' Motion, but underscores why Mr. Funches's testimony is not necessary. The court can take judicial notice of Mr. Funches's prior testimony, if the court deems it relevant.

For these reasons, the Plaintiffs' April 16, 2013 Motion is denied.


**IT IS SO ORDERED.**


<u>s/ Susan G. Braden</u>
**SUSAN G. BRADEN**
**Judge**

4