**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1376
_____

DEBORAH BENNETT,
Appellant

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY; SCOTT
SAUER
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:23-cv-01271)
District Judge: Honorable Gerald J. Pappert
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 14, 2025
_____

Before: CHAGARES, <u>Chief</u> <u>Judge</u>, SCIRICA, and RENDELL, <u>Circuit</u> <u>Judges</u>

(Filed: April 30, 2025)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

Deborah Bennett appeals the District Court's grant of summary judgment in her suit alleging race discrimination, a hostile work environment, and retaliation against the Southeastern Pennsylvania Transportation Authority ("SEPTA") and then-Assistant General Manager Scott Sauer. The District Court held that Bennett failed to show a genuine dispute as to any material fact and did not postpone its decision for Bennett to conduct further discovery. For the reasons below, we will affirm.

I.

We write primarily for the parties and so recite only those facts pertinent to our decision. Bennett began working for SEPTA in 2000 as a Passenger Receipt Clerk. She received a promotion in 2014, becoming an administrative assistant. From 2015 to 2021, she achieved satisfactory marks in her annual performance reviews. Those performance assessments, as well as whether one's current salary is above or below the position's midpoint, influence SEPTA's decision on employees' salary raises. Bennett received raises ranging from 1% to 4% across these years.

At the same time, however, Bennett experienced some workplace disputes. In 2021, she alleges that at the Philadelphia Flower Show, where she was responsible for showing SEPTA employees to their assigned areas, she directed Sauer to a different section than where he was standing. She alleges that Sauer took umbrage with this directive and changed his "entire demeanor" toward her. Bennett Br. 8. Sauer reduced her raise that year from 4.5% to 3.5%, using his authority to approve and adjust merit increases. But Bennett, who is African American, alleges that this action was racially

2

discriminatory, as she heard rumors that a white administrative assistant, Mariellen Medernach, received a 4.5% merit increase despite working only two years at SEPTA. Sauer also discussed Bennett's use of "excessive" overtime with her that year. Appendix ("App.") 575. Bennett alleges that Sauer accused her of stealing hours, yelled at her for excessive overtime work, and belittled her in front of staff during this conversation, but Sauer denies these allegations.

Bennett, upset after these developments, reached out to SEPTA's Equal Employment Office ("EEO") and alleged that she felt "subject to an atmosphere of workplace harassment and intimidation from Scott Sauer." App. 730. She filed a formal complaint a few days later, demanding an apology as well as a retroactive increase in her salary to match the 4.5% raise she says she deserved. At the same time, Sauer instructed Bennett's supervisors to reassign work to prevent Bennett from working overtime. Bennett eventually took medical leave later that year.

Bennett then filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") as well as the Pennsylvania Human Relations Commission ("PHRC"). She alleged race and age discrimination as well as retaliation. At the start of 2022, Bennett received a 3% raise to her salary, but she also believed that this action was racially discriminatory and retaliatory because two white employees who were similarly situated allegedly received higher marks, entitling them to a greater salary increase. SEPTA explained that due to her absence during the merit consideration process, she received the average increase amount in accordance with SEPTA policy. Bennett filed an additional EEOC charge of race discrimination for this action.

3

Two years later, Bennett was transferred to work under a new supervisor. She did not apply for this position and considered it less desirable than her old one, as it came with different hours and no telework privileges. Bennett alleges that she should have been compensated more highly, but her compensation remained the same.

Bennett then filed this lawsuit against SEPTA and Sauer, claiming intentional race discrimination, a hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA"). SEPTA moved for summary judgment, but Bennett sought to defer the District Court's decision under Federal Rule of Civil Procedure 56(d) until SEPTA produced Medernach's compensation and employment records. Yet Bennett's failure to move to compel SEPTA to disclose these documents led the District Court to proceed. It granted summary judgment for SEPTA and Sauer, concluding that nothing in the record showed Bennett was subject to intentional racial discrimination, a hostile work environment, or retaliation. Bennett timely appealed.

## II.[1]

We review the grant of summary judgment de novo. See Cranbury Brick Yard, LLC v. United States, 943 F.3d 701, 708 (3d Cir. 2019). Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We resolve all factual

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291.

doubts and draw all reasonable inferences in favor of the nonmoving party.  DL Res., Inc. v. FirstEnergy Sols. Corp., 506 F.3d 209, 216 (3d Cir. 2007).

The denial of a motion for additional discovery under Rule 56(d) is reviewed for abuse of discretion.  See Murphy v. Millenium Radio Grp. LLC, 650 F.3d 295, 310 (3d Cir. 2011).  Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

## III.

## A.

## 1.

Bennett contends that she experienced intentional race discrimination at SEPTA in violation of Title VII and the PHRA.[2]  Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  In the absence of direct evidence of discrimination, a plaintiff may prove discrimination according to the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  That framework requires showing that:  (1) the plaintiff was "a member of a protected class"; (2) she "was

---

[2] Courts "generally interpret the PHRA in accord with its federal counterparts."  Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

5

qualified for the position" she held; (3) she "suffered an adverse employment action"; and (4) "the action occurred under circumstances that could give rise to an inference of intentional discrimination." Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008). Once those factors are satisfied, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802. If the defendant does so, the plaintiff once again has the burden to "show that the defendant's proffered reason is merely pretext for intentional discrimination." Makky, 541 F.3d at 214.

Bennett's claim regarding the 2021 reduction of her salary increase fails at the prima facie stage. She provides no evidence of racial discrimination, stating only that she heard that Medernach received greater compensation for similar work. To give rise to an inference of discrimination, "comparator employees need not be identical but must be similarly situated in 'all material respects.'" Qin v. Vertex, Inc., 100 F.4th 458, 474 (3d Cir. 2024) (quoting In re Tribune Media Co., 902 F.3d 384, 403 (3d Cir. 2018)). But Bennett provided no details on why Medernach is a suitable comparator-employee, alleging only that Medernach was compensated more highly based on "rumors" and Medernach "talking about it." App. 180. And, as detailed below, Bennett failed to compel discovery from SEPTA about Medernach's compensation. "Bare assertions, conclusory allegations or suspicions will not suffice" to show the existence of a genuine issue of material fact. Jutrowski v. Township of Riverdale, 904 F.3d 280, 288–89 (3d Cir. 2017) (quoting D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 269 (3d Cir. 2014)). Even if Bennett could make a prima facie claim, SEPTA had a legitimate,

6

nondiscriminatory reason for lowering her salary increase. Sauer alleged that he adjusts the proposed merit increases of employees for budgetary reasons every year. Yet Bennett provides nothing to suggest that this explanation is pretextual.

Her claim about her 2022 compensation meets a similar fate. Though Bennett points to the compensation of two white employees, a legitimate, nondiscriminatory reason exists for the pay disparity. The other employees served as a program manager and a director, positions that involve different responsibilities from Bennett's position and were thus "not similarly situated in this context." Tribune Media, 902 F.3d at 403. Bennett was also absent for the merit consideration process that year. SEPTA policy requires that an absent employee receive the average raise for employees with a satisfactory performance rating, which Bennett received. That too qualifies as a non-pretextual reason for SEPTA's actions.

And Bennett's claim of racial discrimination regarding her transfer in 2023 does not survive summary judgment either. A transfer may constitute an adverse employment action for Title VII purposes. See Muldrow v. City of St. Louis, 601 U.S. 346, 358 (2024). But Bennett does not provide any evidence to suggest that she was subject to intentional discrimination. Though she names a host of white administrative assistants who were not transferred, all of them reported to a manager who directly supervised them and had no need to be transferred. By contrast, SEPTA provided a legitimate, nonretaliatory reason for transferring Bennett. Sauer stated that he had no need for a second administrative assistant and thought it was "not fair to [Bennett] to continue having her work with little to no direction." App. 420.

7

Because Bennett fails to show any evidence of discrimination or explain why SEPTA's reasoning was pretextual, the District Court did not err in granting summary judgment to SEPTA and Sauer on these claims.

2.

Bennett also accuses SEPTA and Sauer of creating a racially discriminatory hostile work environment, but that claim also fails at summary judgment. A plaintiff alleging a hostile work environment claim premised on racial discrimination must show, among other things, "that the environment was actually hostile, *i.e.*, that the offensive conduct at work was either 'severe' or 'pervasive.'" Kengerski v. Harper, 6 F.4th 531, 537 (3d Cir. 2021). "To determine whether an environment is hostile, a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). Because "conduct must be extreme" to satisfy this standard, "isolated incidents (unless extremely serious)" do not qualify. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

Bennett's only evidence of "severe or pervasive" harassment includes an upsetting meeting with Sauer about her overtime work, which falls short of Title VII's requirements. Crediting Bennett's account of the events, as we must on summary judgment, such allegations do not qualify as severe or pervasive. One upsetting discussion with a supervisor, even if it took place as Bennett alleged, does not amount to

8

the sort of extreme conduct that constitutes severe or pervasive harassment. "The relative infrequency" of conduct, even if offensive, "indicates that [a supervisor's] actions were not severe or pervasive harassment." Nitkin v. Main Line Health, 67 F.4th 565, 571 (3d Cir. 2023). By contrast, cognizable instances of harassment under Title VII far surpass Bennett's allegations in both frequency and severity. See id. at 572 (collecting cases). The District Court was therefore correct to grant summary judgment for SEPTA and Sauer on this ground as well.

3.

Bennett lastly appeals the denial of her Title VII retaliation claim, but that claim is also unavailing. Bennett alleges that SEPTA retaliated against her by demanding extra work without overtime pay, delaying her salary increase, and involuntarily transferring her to a different office without telework privileges after she submitted her EEO, PHRC, and EEOC complaints. A plaintiff claiming retaliation under Title VII must show that she was engaged in protected activity, that she suffered an adverse employment action, and that there is a causal connection between the protected activity and the adverse employment action. See Qin, 100 F.4th at 475 (quoting Barber v. CSX Distrib. Servs., 68 F.3d 694, 701 (3d Cir. 1995)). Bennett's complaints constitute protected activity, see Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015), and changes to both her pay rate and her office location could qualify as adverse employment actions, see Torre v. Casio, Inc., 42 F.3d 825, 831 n.7 (3d Cir. 1994).

But her retaliation claims falter as well. For one, changes to Bennett's workload expectations began before she filed her complaints. Bennett fails to allege how her

9

working conditions worsened because of her protected activity, given her own admission that she had to "continue performing" excess work after filing the complaints. Bennett Br. 41. Nor does Bennett allege when her 2022 salary increase took place. As the District Court concluded, if the 2022 salary increase occurred in a similar timeframe as the 2021 salary increase, that would suggest that her complaint preceded the increase by nearly a month, which by itself is not "unusually suggestive" of retaliatory motive. Est. of Smith v. Marasco, 318 F.3d 497, 513 (3d Cir. 2003); see Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (holding that three weeks between protected activity and allegedly retaliatory action did not suggest retaliation by itself). And while the process of her transfer was close in timing to her EEOC complaint, Bennett cannot show that SEPTA's legitimate reason for transferring her was pretextual. As explained above, SEPTA had a legitimate, nonretaliatory reason for transferring Bennett to another office where she could work for a supervisor. And the denial of telework privileges extended to all employees at the office to which Bennett was transferred. As with her racial discrimination claim, Bennett does not provide any evidence suggesting that SEPTA's reasoning is pretextual. We will therefore affirm the District Court's grant of summary judgment.

B.

Bennett also objects to the District Court's denial of her Rule 56(d) motion for further discovery. We have held that Rule 56(d) requires a party seeking discovery while a summary judgment motion is pending to "submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary

10

judgment; and why it has not previously been obtained." <u>Dowling v. City of Philadelphia</u>, 855 F.2d 136, 140 (3d Cir. 1988). "[A] request for relief under Rule [56(d)] is extremely unlikely to succeed when the party seeking the delay has failed to take advantage of discovery." <u>Koplove v. Ford Motor Co.</u>, 795 F.2d 15, 18 (3d Cir. 1986) (first alteration in original) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2741, at 553 (1983)).

Such is the case here. Nothing in Bennett's Rule 56(d) motion, or any accompanying declaration, explained why she did not move to compel the discovery she first sought. As Bennett failed to explain her "lack of diligence" in pursuing discovery, "we cannot conclude that the district court abused its discretion in declining to withhold ruling on the motion for summary judgment." <u>Lunderstadt v. Colafella</u>, 885 F.2d 66, 71–72 (3d Cir. 1989).

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.