Elizabeth MILLER, Plaintiff,

v.

BENEFICIAL MANAGEMENT CORPORATION, Beneficial Management Corporation of America and Beneficial Corporation, Defendants.

Civ. A. No. 89–3089 (AJL).

United States District Court,
D. New Jersey.

Sept. 20, 1993.

Aron M. Schwartz, Vogel, Chait, Schwartz and Collins, Morristown, NJ, for plaintiff.

Michael K. Furey, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, for defendants.

## OPINION

LECHNER, District Judge.

This is an action brought by plaintiff Elizabeth G. Miller ("Miller") against defendants Beneficial Management Corporation, Beneficial Management Corporation of America and Beneficial Corporation (collectively, "Beneficial") for claims relating to sex and age discrimination in employment in violation of Federal and state law. Jurisdiction is alleged pursuant to the Equal Pay Act, as amended, 29 U.S.C. § 206 ("EPA"), the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"), the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 28 U.S.C. §§ 1331 and 1367.

Currently before the court is the appeal by Beneficial of the order of Magistrate Judge Dennis M. Cavanaugh ("Judge Cavanaugh"),

dated 20 July 1993 (the "20. July 1993 Order"), denying Beneficial's motion to amend its answer.[1] Miller cross-appeals Judge Cavanaugh's denial of sanctions against Beneficial under Fed.R.Civ.P. 11 ("Rule 11") and 28 U.S.C. § 1927. For the reasons set forth below, the decision of Judge Cavanaugh is reversed with respect to Beneficial's motion, and affirmed with respect to Miller's motion for sanctions.

*Facts* [2]

Miller's claims of age and sex discrimination relate to her transfer from Beneficial's Legal Department to its Government Relations Department. Complaint and Jury Demand ("Complaint"), ¶ 7. In early 1984, Beneficial vice president David Ward ("Ward") informed Miller that Charles Walsh, vice president and counsel for government relations ("Walsh"), and Ken Raatz, an employee in the Government Relations Department ("Raatz"), were to be terminated from their posts and he invited her to replace them. *Id.*, ¶¶ 7–8. Miller contends she formally began working in the Government Relations Department on 1 July 1984 and took over for both Walsh and Raatz. *Id.* According to Miller, despite assuming greater responsibilities than those handled by either Walsh or Raatz, her base salary was less than either of their salaries. *Id.*, ¶¶ 9–12.

*Procedural History*

The Complaint, filed by Miller on 20 July 1989, alleged discrimination under the EPA, ADEA, New Jersey Law Against Discrimination ("NJLAD"), N.J.Stat.Ann., 10:5–1 *et seq.*, and the New Jersey Conscientious Employee Protection Act, N.J.Stat.Ann. 34:19–1 *et seq.*[3] Miller first modified the Complaint on 21 November 1989, when she filed an amendment to the Complaint adding a claim of discrimination under Title VII (the "Amended Complaint"). Miller's request for leave to file a second amended complaint was granted by Magistrate Judge Dennis M. Cavanaugh, but Miller did not file an amendment within the time provided.

Beneficial filed its answer to the Amended Complaint on 29 September 1989 (the "Answer"). In the Answer, Beneficial asserted six separate affirmative defenses.

By motion, filed 7 August 1991, Beneficial moved for summary judgment on, and/or dismissal of the Amended Complaint. On 30 April 1991, Magistrate Judge Ronald J. Hedges ("Judge Hedges"), then presiding over the discovery aspect of the case, stayed all additional discovery pending disposition of

1. In support of its motion, Beneficial submitted the following: Letter–Brief in Support of Beneficial's Appeal, dated 30 July 1993 (the "Moving Brief"), including as Exhibit 2, Proposed Amended Answer (the "Proposed Amended Answer"); Certification of Michael K. Furey (the "Furey Cert."), including as Exhibit 4, Beneficial Internal Memorandum dated 8 September 1988 (the "8 Sept. 1988 Memo"), including as Exhibit 5, Beneficial Internal Memorandum dated 18 October 1988 (the "18 Oct. 1988 Memo"), including as Exhibit 6, Beneficial Internal Message Display dated 17 November 1988 (the "17 Nov. 1988 Memo"), including as Exhibit 7, Excerpts from Beneficial's Brief in Support of Its Motion for Summary Judgment in this matter ("Beneficial's Summary Judgment Brief"), including as Exhibit 8, Excerpts from Deposition of Miller taken 8 June 1993 (the "Miller Dep."). Beneficial submitted a reply brief, but did so after the last day permitted for submitting papers on this motion. *See* Appendix N of the General Rules for the District of New Jersey. Therefore, Beneficial's reply brief will not be considered in ruling on the instant motion.

 In opposition to the motion, Miller submitted the following: Plaintiff's Brief in Opposition to Defendants' Appeal from Magistrate's July 20,

1993 Order, dated 12 August 1993 (the "Opp. Brief"); Certification of Aron M. Schwartz (the "Schwartz Cert."), including as Exhibit A, the 9 Sept. 1988 Memo, including as Exhibit B, the 18 Oct. 1988 Memo, including as Exhibit C, the 17 November 1988 Memo, including as Exhibit G, Notes from Phone Conversation dated 20 October 1988 (the "20 Oct. 1988 Telephone Notes"), including as Exhibit H, Beneficial Internal Memorandum dated 13 December 1988 (the "13 Dec. 1988 Memo"), including as Exhibit R, Beneficial Internal Memorandum dated 3 October 1988 (the "3 Oct. 1988 Memo"). Miller also submitted the transcript of the oral argument in Beneficial's motion before Judge Cavanaugh, which took place on 15 July 1993 (the "15 July Oral Argument").

2. For a more extensive statement of the facts, *see Miller v. Beneficial Management Corp.*, 977 F.2d 834, 835–41 (3d Cir.1992); *Miller v. Beneficial Management Corp.*, 776 F.Supp. 936, 940–51 (D.N.J.1991).

3. By letter opinion, dated 23 July 1990, Miller's claim under the New Jersey Conscientious Employee Protection Act was dismissed pursuant to Fed.R.Civ.P. 12(b)(1).

Beneficial's motion to dismiss and/or for summary judgment. By letter-opinion, filed 18 October 1991, summary judgment was granted in favor of Beneficial. *See Miller v. Beneficial Management Corp.,* 776 F.Supp. 936 (D.N.J.1991).

By notice of appeal, filed 15 November 1991, Miller appealed to the Third Circuit the grant of summary judgment. On 19 November 1992, the circuit reversed the grant of summary judgment and remanded, holding that genuine issues of material fact existed. *See Miller v. Beneficial Management Corp.,* 977 F.2d 834 (3d Cir.1992).

On 3 March 1993, a Substitution of Attorney was entered on Beneficial's behalf. As a result thereof, current counsel for Beneficial, Michael K. Furey ("Furey"), replaced former counsel S. Joseph Fortunato.

By order, dated 21 April 1993, Judge Cavanaugh reopened discovery and directed the manner in which it should be carried out. Judge Cavanaugh also ordered that all discovery should be completed on or before 30 July 1993.

By order, dated 6 May 1993, Judge Cavanaugh denied Miller's third motion to amend the Amended Complaint and her motion to compel answers to interrogatories. By letter-opinion, dated 14 June 1993, the court affirmed Judge Cavanaugh's order of 6 May because of Miller's failure to timely appeal. *See Miller v. Beneficial Management Corp.,* No. 89–3089, slip op. (D.N.J. 14 June 1993).

On 9 July 1993, Beneficial moved before Judge Cavanaugh for leave to amend the Answer pursuant to Fed.R.Civ.P. 15. Beneficial sought to amend the Answer to include two additional affirmative defenses they assert they acquired during the Miller Deposition. Plaintiffs cross-moved for sanctions, for "having to oppose such a hopelessly flawed application." 20 July 1993 Order at 5.

By the 20 July 1993 Order, Judge Cavanaugh denied Beneficial's motion to amend the Answer. Judge Cavanaugh held:

It is within this Court's discretion to deny Defendant's motion. I find that Defendants' delay is insufficiently and inconsistently explained; the factual bases for the amendment were known to Defendants

well over four years before Plaintiff's deposition. In reality, the so called new evidence is not new at all.... The Court finds that the undue delay that would be caused by Defendants' actions would unfairly prejudice Plaintiff. Therefore, based upon the foregoing, Defendants' motion to amend their Answer is DENIED.

20 July 1993 Order at 4–5. In explaining the prejudice which would be caused to Miller by a grant of leave to amend the Answer, Judge Cavanaugh stated:

This case has been assigned a trial date of September 27, 1993. Pretrial submissions are due September 10, 1993. Discovery is to close July 31, 1993 and at this time most pretrial discovery has been completed. If Defendants' motion is granted at this late stage of the case Plaintiff would be required to redepose numerous witnesses who were never specifically questioned about the issues Defendants now seek to bring into the action. This is due to the fact that while the parties both had knowledge of the issues, Plaintiff had no reason to address them previously.

*Id.* at 4.

Judge Cavanaugh also denied Miller's request for sanctions under Rule 11 and 28 U.S.C. § 1927. In so doing, Judge Cavanaugh relied on his interpretation of Rule 11 and 28 U.S.C. § 1927 as both requiring a showing of bad faith on the part of the party or attorney against whom sanctions are sought. *See* 20 July 1993 Order at 5. Because Judge Cavanaugh found that Beneficial did not act in bad faith, he denied Miller's motion for sanctions. *Id.*

By notice of appeal filed 2 August 1993, Beneficial appealed the 20 July Order's denial of leave to amend the Answer. In her Opposition Brief, Miller appealed the 20 July 1993 Order's denial of sanctions against Beneficial, although she did not file an appeal on this portion of the 20 July 1993 Order.

Trial was originally set for 27 September 1993. 20 July 1993 Order at 4. By order, dated 12 August 1993, Miller's request for adjournment was granted, and trial was set to commence on 4 October 1993.

*Beneficial's New Defenses*

Beneficial contends that because of newly-acquired evidence, two defenses are now available to it which were not available at the time the Answer was filed. To this end, Beneficial asserts certain statements made by Miller at the Miller Deposition have provided them for the first time with the two factual bases for an absolute defense. Moving Brief at 11–12. First, Beneficial points to statements made by Miller which Beneficial argues amount to admissions that she had misrepresented her age in job application materials. Moving Brief at 4. The relevant part of the Miller Deposition reads as follows:

Q [by Beneficial's counsel]: Mrs. Miller, when were you born?

A [by Miller]: February 20th, 1928.

Q: When you applied for a job at Beneficial, did you give a different date of birth?

A: I don't believe that question was on the application.

Q: At some point in time while you were employed at Beneficial, did you give someone, an employee, a date of birth different than February 20th, 1928?

A: I may have.

[Objection of Miller's counsel on ground of relevance]

Q: For what purpose?

A: I don't even remember.

Q: Did you submit a resume which had a different date of birth than February 20th, 1928?

[Objection of Miller's counsel]

A: I gave a resume to someone I worked with at Allied who may have submitted that.

Q: Did it contain a false birth date?

A: I don't know. It may have.

Q: Why did you put a false birth date on your resume?

[Objection by Miller's counsel on grounds that Miller had not yet acknowledged falsification of birth date]

Q: If you gave a false date, why did you do that?

A: .... I did sometimes give another birth date because I had difficulty finding a job.

Miller Dep. at 24–26.

Second, Beneficial states: "It was also at the [Miller] Deposition that [Miller] admitted that she had removed documents from Beneficial without permission." Moving Brief at 6. The portion of the Miller Deposition upon which Beneficial relies reads as follows:

Q [by Beneficial's counsel]: Why did you take [the documents]?

[Objection by Miller's counsel]

A [by Miller]: Because I thought they might protect me.

. . . .

Q: When did you start copying documents and removing them?

[Objection by Miller's counsel]

A: I don't remember.

Miller Dep. at 24.

Beneficial asserts it will "demonstrate at trial that [Miller] would have been terminated had [Beneficial] learned that she had misrepresented her age [and removed company documents]." Moving Brief at 4.

Beneficial argues its proof of Miller's acts, and that they would have been grounds for termination, would provide an absolute defense to Miller's discrimination action. Moving Brief at 8–9. For this defense, Beneficial relies on a line of cases beginning with *Summers v. State Farm Mutual Automobile Insurance Co.*, 864 F.2d 700 (10th Cir.1988). *Id.* at 4. *Summers* involved a plaintiff employee who alleged he was discharged because of his age and religion; the plaintiff brought suit under Title VII and the ADEA. In preparing for trial, the defendant employer discovered evidence of past misconduct on the part of the plaintiff which would have been grounds for discharge. *See* 864 F.2d at 704. The Tenth Circuit held that the so-called "after-acquired evidence," though not the motive for the discharge and discovered after the discharge, precluded the plaintiff from relief. 864 F.2d at 708; *accord O'Driscoll v. Hercules, Inc.*, 745 F.Supp. 656, 659–60 (D.Utah 1990) (independent basis for discharge, though discovered during prepara-

tion for trial, precluded recovery on claim for discriminatory discharge).

Beneficial argues that if it can prove Miller's alleged misconduct would have been grounds for termination, Miller is precluded from recovery on her employment discrimination claim by the rule of *Summers* (the "*Summers* Defense"). Accordingly, Beneficial seeks to amend the Answer to include the following allegations (the "Proposed Amendments"):

### SEVENTH SEPARATE DEFENSE

Plaintiff's claims are barred by her misrepresentation and fraud as to her resume and applications for health, death and pension benefits related to her employment at Beneficial.

### EIGHTH SEPARATE DEFENSE

Plaintiff's claims are barred as a result of her unauthorized removal of documents from Beneficial.

Proposed Amended Answer at 10.

Miller's alleged misconduct is referenced in several internal communications of Beneficial. For example, on 8 September 1988, Beneficial senior vice president Ward, who was Miller's immediate supervisor, issued a memorandum addressed to "Elizabeth G. Miller 1988 Bentrak." The 8 September 1988 Memo listed various allegations of misconduct on Miller's part, as well as criticisms of her performance.[4] *See* 8 Sept. 1988 Memo. "As an aside," the 8 September 1988 Memo stated,

I looked in the personnel records after you left home on September 1.... You told the company that you were born in 1931 and would now be 57 years of age. You repeated a number of times in the September 1 meeting with Larry Cole that you were 60 years old. A misrepresentation was made on one of those occasions, although I don't know which one.

8 Sept. 1988 Memo. A cover sheet attached to the 8 September 1988 Memo indicates it

was circulated by Lawrence Cole, Beneficial vice president for human resources ("Cole"), to Ward, Beneficial president David J. Farris ("Farris"), Beneficial senior vice president and general counsel Charles E. Hance ("Hance"), and Beneficial senior vice president for planning and administration Maryann W. Schneider ("Schneider"). 8 Sept. 1988 Memo; Schwartz Cert., Ex. J; Opp. Brief at 4.

On 19 September 1988, Miller wrote Ward a letter containing allegations of illegal and unethical activities at Beneficial. *See Miller,* 776 F.Supp. at 949. As a result of this letter an internal investigation was conducted regarding Miller's employment history at Beneficial (the "Internal Investigation"). *Id.* at 950.

On 3 October 1988, Ward circulated a memorandum regarding Miller to Hance, Schneider, Farris and Eileen Caulfield ("Caulfield"), the Beneficial in-house attorney conducting the Internal Investigation. The 3 October 1988 Memo recommended Miller be "placed on a leave of absence," in part because Miller "has been asking for various files relating to contributions." 3 Oct. 1988 Memo.

On 18 October 1988, Ward addressed a memorandum to Schneider, Hance, and Cole on the subject of "Beth Miller." The 18 October 1988 Memo expresses concern about certain "blatant" falsehoods made by Miller, including "her lying about her age on her employment application." 18 Oct. 1988 Memo.

Telephone notes offered by Miller evidence a conversation which took place on 20 October 1988 between Hance and James Gilliam, Beneficial executive vice president, general counsel and member of the board of directors ("Gilliam"). In the 20 Oct. 1988 Telephone Notes, Hance noted of Miller: "She asked for some time to work on her files (she has at home)." 20 Oct. 1988 Telephone Notes.

On 17 November 1988, Marilyn A. Maher ("Maher"), Beneficial vice president, addressed a "Message Display" memorandum

---

4. The 8 September 1988 Memo stated that Miller had secretly taped a meeting with a colleague, and also expressed concern over Miller's "abusive" behavior and other "interpersonal problems." 8 Sept. 1988 Memo.

to Hance, Cole, and Shirley Kent.[5] The 17 November 1988 Memo stated:

> Message: As information, there is a discrepancy on the disability form which [Miller] completed with regard to her age. On our health and life records, she shows her age as 2/20/31 [*sic.*] and on the disability form she shows it as 2/20/28.

17 Nov. 1988 Memo. The 17 Nov. 1988 Memo attaches the referenced "disability form." *Id.* Hance acknowledged receipt of the 17 November 1988 Memo on the same date, and thanked Maher for the information. Schwartz Cert., Ex. 6.

On 13 December 1988, Ward addressed a memorandum to Beneficial chairman and chief executive officer Finn Caspersen ("Caspersen") on the subject of "Security and Harassment." In the 13 December 1988 Memo, Ward expressed concern over several aspects of Miller's behavior. He further stated: "We now know that she had secretly been accumulating files of company documents at home." 13 Dec. 1988 Memo.

On 6 January 1989, Miller wrote a letter to Hance notifying him that she no longer considered herself employed by Beneficial and would no longer be reporting to work. Schwartz Cert., Ex. I. On 13 January 1989, Hance responded by letter that he was "keeping [Miller's] position for [her]." Schwartz Cert., Ex. M. On 20 January 1989, Hance again wrote Miller, offering her a position in Beneficial's legal department. Schwartz Cert., Ex. N.

As stated, Beneficial filed its motion for summary judgment on 7 August 1991. In its brief in support of this motion, submitted 8 August 1991, Beneficial asserted,

> In September 1988, plaintiff stated that she was 60 years old, which would mean that she had been born in late 1927 or 1928. On her resume that she sent to [Beneficial] prior to her employment, plaintiff has her date of birth as February 20, 1931; her high school graduation date, listed by plaintiff on her Employment Application, was apparently adjusted by three

years to be consistent with the February 20, 1931, date of birth.

Beneficial's Summary Judgment Brief at 4.

In oral argument on Beneficial's 7 August 1991 motion for summary judgment, held 23 September 1991 (the "1991 Oral Argument"), Miller's counsel Aron M. Schwartz ("Schwartz") stated,

> At the time that [Miller] was applying for the job, she was 50 years old or a couple years beyond that and she was genuinely afraid that given her age, given the facts [*sic.*] that she went to law school later in life, that she would not get a job if she were honest about her age. That's the way she felt and that's what she did.

1991 Oral Argument at 6, lines 12–17.

*Discussion*

### A. Standard of Review of Decision by Magistrate Judge

Pursuant to 28 U.S.C. § 636(b)(1), Rule 72 of the Federal Rules of Civil Procedure and Rule 40(A) of the General Rules for the District of New Jersey, a United States Magistrate Judge may hear "dispositive" and "nondispositive" motions assigned by the district court.

■ With regard to nondispositive motions, "the district court may modify the magistrate [judge's] order only if the district court finds that the magistrate [judge's] ruling was clearly erroneous or contrary to law." *Gomez v. United States,* 490 U.S. 858, 868, 109 S.Ct. 2237, 2244, 104 L.Ed.2d 923 (1989), *Haines v. Liggett Group, Inc.,* 975 F.2d 81, 91 (3d Cir.1992); *see also* 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). Upon review by a district court of a nondispositive matter, the magistrate judge is accorded wide discretion. *National Labor Relations Board v. Frazier,* 966 F.2d 812, 815 (3d Cir.1992); *Hanntz v. Shiley, Inc. Div. of Pfizer, Inc.,* 766 F.Supp. 258, 262 (D.N.J. 1991); *Republic of Philippines v. Westinghouse Electric Corp.,* 132 F.R.D. 384, 387 (D.N.J.1990); *Dome Petroleum Ltd. v. Employers Mutual Liability Ins. Co.,* 131 F.R.D. 63, 65 (D.N.J.1990); *Schroeder v. Boeing Commercial Airplane Co., Div. of*

---

**5.** Neither party has identified Shirley Kent's role in Beneficial.

*Boeing Corp.*, 123 F.R.D. 166, 169 (D.N.J. 1988); *Environmental Tectonics Corp., International v. W.S. Kirkpatrick & Co.*, 659 F.Supp. 1381, 1391 (D.N.J.1987), *aff'd in part and rev'd in part*, 847 F.2d 1052 (3d Cir. 1988).

■ With respect to dispositive motions, the district court must make a *de novo* determination of those portions of the magistrate judge's report to which a litigant has filed an objection. *Gomez*, 490 U.S. at 868, 109 S.Ct. at 2244; *Haines*, 975 F.2d at 91; 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(a); General Rule 40(D)(5).

■ In this case, the 20 July 1993 Order concerned a nondispositive motion; accordingly, it may be modified if Judge Cavanaugh's decision is clearly erroneous or contrary to law.

B. *Standard for Granting Leave to Amend Answer*

Beneficial asserts that Judge Cavanaugh's 20 July 1993 Order, denying Beneficial leave to amend the Answer to include the Proposed Amendments, was "clearly erroneous and contrary to law." Moving Brief at 2.

Federal Rule of Civil Procedure 15(a) ("Rule 15(a)") provides in relevant part,

[I]f the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may ... amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be given freely when justice requires.

Fed.R.Civ.P. 15(a). Because Beneficial's attempt to amend the Answer came more than twenty days after the Answer was filed, and because Miller opposed the amendment, Beneficial could only amend the Answer by leave of the court.

■ The Third Circuit has "shown a strong liberality in allowing amendments under Rule 15(a)." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir.1989). "This approach ensures that a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chemical Co.*, 921 F.2d 484, 487 (3d Cir.1990). The Supreme Court has stated that while leave to amend under Rule 15 is not unbounded, leave should be denied only in certain exceptional circumstances:

In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment., etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The decision to grant or deny a movant's request to amend is within the discretion of the district court; however, the court must state the reasons justifying its decision. *Foman*, 371 U.S. at 182, 83 S.Ct. at 230; *Coventry v. United States Steel Corp.*, 856 F.2d 514, 519 (3d Cir.1988); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984).

In the case at bar, Miller argues that granting Beneficial leave to amend the Answer would result in undue prejudice to Miller and undue and unexplained delay. Miller further asserts the Proposed Amendments would be futile. Opp. Brief at 14–19, 21. Judge Cavanaugh based his decision on his finding of undue prejudice to Miller and undue and unexplained delay. Judge Cavanaugh did not address the merits of the Proposed Amendments.[6] 20 July 1993 Order at 2–4.

---

6. Beneficial argues Judge Cavanaugh's failure to address the merits of the *Summers* Defense amounts to an "acknowledgement that at the very least the proposed defenses are not 'futile.'" Moving Brief at 8. In fact, however, Judge Cavanaugh relied on other, independent grounds for denying Beneficial leave to amend; it was therefore unnecessary for Judge Cavanaugh to reach the merits of the Proposed Amendments. *See* 20 July 1993 Order. Judge Cavanaugh's failure to address the merits of the *Summers* Defense cannot therefore be seen as a comment on the viability of the Proposed Amendments.

## 1. *Prejudice and Undue Delay*

■ The Third Circuit "has interpreted [the factors listed in *Foman* ] to emphasize that 'prejudice to the non-moving party is the touchstone for the denial of an amendment.'" *Bechtel,* 886 F.2d at 652; *see Dole,* 921 F.2d at 488 (same); *Heyl & Patterson International, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.,* 663 F.2d 419, 425 (3d Cir.1981) (same), *cert. den., F.D. Rich Housing, Inc. v. Government of the Virgin Islands,* 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982); *Paton v. La Prade,* 524 F.2d 862, 875 (3d Cir.1975) ("[A]bsent resultant prejudice to the opposing party or similar reasons, leave to amend should be freely granted."); *see Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330–31, 91 S.Ct. 795, 802–03, 28 L.Ed.2d 77 (finding amendment impermissible primarily on ground of prejudice to non-moving party), *reh. denied,* 401 U.S. 1015, 91 S.Ct. 1247, 28 L.Ed.2d 552 (1971). Where prejudice is asserted as a ground for opposing amendment of a pleading, "it is the opposing party's burden to prove that such prejudice will occur." *Kiser v. General Electric Corp.,* 831 F.2d 423, 428 (3d Cir.1987), *cert. denied sub nom. Parker–Hannifin Corp. v. Kiser,* 485 U.S. 906, 108 S.Ct. 1078, 99 L.Ed.2d 238 (1988). Moreover, "the non-moving party must do more than merely claim prejudice; it must show that it [would be] unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *Bechtel,* 886 F.2d at 652; *see Dole,* 921 F.2d at 488.

Where undue delay is asserted as a ground for denying leave to amend, "the burden shifts to the [moving party] to demonstrate that the delay resulted from oversight, inadvertence, or excusable neglect." *Dole,* 921 F.2d at 487; *see Harrison Beverage Co. v. Dribeck Importers, Inc.,* 133 F.R.D. 463, 468 (D.N.J.1990) ("Although incidental delay alone is not a sufficient ground to deny a motion to amend, the movant must demonstrate that its delay in seeking to amend is satisfactorily explained.").

In *Dole,* the Third Circuit considered a case where, as here, discovery was stayed pending decision on a motion for summary judgment. 921 F.2d at 485–86. Two months after discovery was stayed, the plaintiff moved to amend the complaint. The Third Circuit held that under the circumstances, the plaintiff's actions did not constitute undue delay. *Id.* at 487. The court reasoned that "any opportunity to develop the factual underpinnings of [plaintiff's] case was arrested when [defendant] moved to stay discovery." *Id.* at 487 n. 6.

■ The Third Circuit has further recognized, "mere delay is not by itself enough to justify denial of leave to amend. The delay, to become a legal ground for denying a motion to amend, must result in prejudice to the party opposing the amendment." *Kiser,* 831 F.2d at 427; *see Howze,* 750 F.2d at 1212 ("Delay alone, however is an insufficient ground upon which to deny a motion to amend. Rather, the touchstone is whether the non-moving party will be prejudiced if the amendment is allowed." (citations omitted)); *Cornell & Co., Inc. v. Occupational Safety and Health Review Comm.,* 573 F.2d 820, 823 (3d Cir.1978) ("Delay alone ... is an insufficient ground to deny an amendment, unless the delay unduly prejudices the non-moving party."). As stated, the party opposing the amendment has the burden of proving that such prejudice will result from the delay. *Kiser,* 831 F.2d at 428.

In *Heyl & Patterson International,* the Third Circuit stated: "In the absence of substantial or undue prejudice, denial must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency [in pleadings], or futility of amendment." 663 F.2d at 425; *see Bechtel,* 886 F.2d at 652–53 (citing *Heyl & Patterson International* in reversing denial of leave to amend). The Circuit, however, went on to treat undue prejudice as a threshold issue for a finding of "undue" delay. The Circuit held that unjustified delay and bad faith in seeking an amendment could not defeat a motion to amend without a showing that the delay caused actual prejudice to the non-moving party.[7] *Heyl & Patterson Inter-*

---

**7.** The *Heyl & Patterson International* court stated:

*national,* 663 F.2d at 426. Similarly, in *Adams v. Gould Inc.,* 739 F.2d 858 (3d Cir. 1984), *cert denied,* 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985), the Third Circuit stated:

> The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become "undue," placing an unwarranted burden on the court, or become "prejudicial," placing an unfair burden on the opposing party.

739 F.2d at 868.

■ Applying these principles to the case at bar, Miller has not carried her burden of demonstrating prejudice will result from Beneficial's amendment of the Answer at this time. Miller's only support for her assertion of prejudice is her contention that the Proposed Amendments will necessitate additional discovery on her part. Opp. Brief at 19–21. The necessity of discovery is also the only ground relied upon by Judge Cavanaugh in finding prejudice to Miller. 20 July 1993 Order at 4. In fact, it appears the facts to be proven in support of the *Summers* Defense are narrow in scope. It is, moreover, Beneficial's burden to come forward with such facts.

To the extent additional discovery is necessary and reasonable, the adjournment of the 4 October 1993 trial date and an extension of time within which to conduct discovery will be effected. Under these circumstances, Beneficial's amendment of the Answer will not deprive Miller or Beneficial of the opportunity to develop and present evidence relevant to the Proposed Amendments. Accordingly, Beneficial's addition of the Proposed Amendments will not so prejudice Miller as to provide legal grounds to deny Beneficial leave to amend the Answer. *See Dole,* 921 F.2d at 488.

[Non-movant] claims that there was no justification proffered for the delay in making the amendments and further that the pleadings were deliberately misleading. [Non-movant] seems to suggest that such conduct constitutes reversible error because it is prejudice *per se.* However, [non-movant] has a heavier burden than merely claiming prejudice, it must show [actual prejudice].

Any undue delay by Beneficial in adding the Proposed Amendments is not a sufficient ground to deny the requested leave to amend the Answer, absent a showing that such delay would result in prejudice to Miller. *See Kiser,* 831 F.2d at 427. As stated, Miller has not shown such prejudice would result in the instant case. Therefore, even if Beneficial's delay in adding the Proposed Amendments were found to be "undue" or unexplained, such a finding would be insufficient grounds to deny Beneficial leave to amend the Answer. *See id.*

■ Beneficial's delay in adding the Proposed Amendments is not, in any event, so undue or unexplained as to weigh against granting leave to amend the Answer. Miller has submitted evidence that Beneficial had some degree of knowledge of Miller's misconduct as early as 8 September 1988, more than four years before it sought to amend the Answer.[8] *See supra* at 11–15. In light of this evidence, Beneficial has the burden of demonstrating "that the delay resulted from oversight, inadvertence, or excusable neglect." *Dole,* 921 F.2d at 487.

Beneficial has carried its burden in this regard. Beneficial first contends that because of the suspension of discovery in this matter, it was unable to fully develop the factual basis for the Proposed Amendments until April 1993. Moving Brief at 3–4. Discovery in this case was suspended between 30 April 1991 and 21 April 1993. *See supra* at 993. Even if Beneficial had some evidence of Miller's misconduct in April 1991, Beneficial did not have an opportunity to develop this evidence between April 1991 and April 1993. It is entirely reasonable for Beneficial to have deferred amendment of the Answer until such time that they had developed the factual underpinnings required to assert the *Summers* Defense. *See Dole,* 921 F.2d at 487 n. 6. It was also reasonable for Benefi-

663 F.2d at 426.

8. Judge Cavanaugh denied Beneficial leave to amend the Answer largely on his finding that Beneficial's "delay is insufficiently and inconsistently explained; the factual bases for the amendment were known to [Beneficial] well over four years before the [Miller] Deposition." 20 July 1993 Order at 4.

cial to have believed that these factual underpinnings were not sufficiently developed until the Miller Deposition.

Beneficial was required by law to have a good faith belief in the viability of the *Summers* Defense before it added the Proposed Amendments. *See* 28 U.S.C. § 1927; Fed. R.Civ.P. 11; *Chambers v. NASCO, Inc.*, 501 U.S. 32, ——, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27, *reh. denied*, —— U.S. ——, 112 S.Ct. 12, 115 L.Ed.2d 1097 (1991). By delaying addition of the Proposed Amendments until it had such a belief, Beneficial sought to avoid a fishing expedition approach to pleading defenses. It was therefore reasonable and in fact necessary for Beneficial to delay adding the Proposed Amendments until after the Miller Deposition.

Beneficial further points out that its current counsel, Furey, took on this case in March 1993. Moving Brief at 3 n. 2. By that time, the case was already nearly four years old, and the documentary evidence on both sides was already extensive. It is reasonable that Furey would not have been certain of, or realized the significance of, Miller's misconduct before the Miller Deposition in June 1993. Under these circumstances, Beneficial's delay was satisfactorily explained, and does not constitute legal grounds for denying Beneficial leave to amend the Answer. *See Dole*, 921 F.2d at 488; *Harrison Beverage*, 133 F.R.D. at 468.

### 2. *Futility of the Proposed Amendments*

"Futility of an amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue." *Harrison Beverage*, 133 F.R.D. at 468. A determination as to futility does not require a conclusive determination on the merits of a claim or defense. *Id.* at 469. Rather, the futility of an amendment may only serve as a basis for denial of leave to amend where "the proposed amendment is frivolous or advances a claim that is legally insufficient on its face." *Id.* at 468. Moreover, "[g]iven the liberal standard applied to the amendment of pleadings, courts place a heavy burden on opponents who wish to declare a proposed amendment futile." *Van Le v. Five Fathoms, Inc.*, No. CIV. 91-

3168, 1992 WL 471246 at *2 (D.N.J. 14 Aug. 1992) (Rosen, Mag.).

The Third Circuit has stated that "the trial court may properly deny leave when the amendment would not withstand a motion to dismiss [under Fed.R.Civ.P. 12(b)(6)]." *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983); *see Jablonski v. Pan American World Airways*, 863 F.2d 289, 292 (3d Cir.1988) (same); *accord Bailey v. Sullivan*, 885 F.2d 52, 59 (3d Cir.1989) ("[N]o purpose would be served by allowing [an] amendment to the complaint to add a challenge which would be dismissed.").

Assertions that amendments to answers are futile are also reviewed under the "motion to dismiss" standard. *See, e.g., Van Le*, 1992 WL 471246 at *2 (applying motion to dismiss standard to proposed amendment asserting limitation of liability defense); *Harrison Beverage*, 133 F.R.D. at 468 (applying motion to dismiss standard to proposed amendment asserting six affirmative defenses); *Delcor Laboratories v. Creative Aerosol Corp.*, No. CIV. 88-1517, 1990 WL 49967 at *1 (D.N.J. 2 Apr. 1990) (applying motion to dismiss standard to proposed amendment asserting counterclaim). Under this standard, the court "must accept as true the allegations in [the defendant's] proposed affirmative defenses and construe those allegations in the light most favorable to [the defendant]." *Fireman's Fund Insurance Co. v. Krohn*, No. 91 CIV. 3546, 1993 WL 299268 at *4 (S.D.N.Y. 3 Aug. 1993); *see Northwestern National Insurance Co. of Milwaukee v. Alberts*, 717 F.Supp. 148, 153 (S.D.N.Y.1989) (applying same standard in evaluating amendment to answer to state counterclaim). Moreover, in making its determination as to an amendment's futility, the court looks only to the pleadings. *See Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir.1992) ("On review of a motion to dismiss for failure to state a claim, we look only to the complaint to see whether there is any set of facts plaintiff can prove that would support [his or her claim]. All allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.").

Turning to the instant case, Miller has not carried her burden of showing Beneficial's Proposed Amendments would be futile. Quite to the contrary, it appears Beneficial's assertion of the *Summers* Defense would create a viable defense to Miller's Federal discrimination claims, as well as to her state claims.

The Third Circuit has not examined the validity of the *Summers* Defense. The *Summers* Defense has been addressed, with varying degrees of approval, by the Tenth Circuit, the Sixth Circuit, the Seventh Circuit and the Eleventh Circuit.

As stated, in *Summers*, the Tenth Circuit reviewed a discrimination case brought under Title VII and the ADEA. There, the defendant discovered evidence of the plaintiff's falsification of records after the alleged discriminatory termination and during preparation for trial. The defendant asserted that the falsifications were grounds for termination; the defendant further asserted that the plaintiff would have been terminated had the defendant known of the falsifications during the plaintiff's employment. 864 F.2d at 708. The court held that the existence of legitimate grounds for termination, and the showing that the plaintiff would have been terminated on those grounds, negated any injury on the plaintiff's part. The court held that the plaintiff was therefore barred from any relief on the discrimination claim, and affirmed the district court's grant of summary judgment to the defendant. *Id.*

The Sixth Circuit has substantially adopted the theory of the *Summers* Defense. In *Milligan–Jensen v. Michigan Technological University,* 975 F.2d 302 (6th Cir.1992), *cert. dism'd,* —— U.S. ——, 114 S.Ct. 22, 125 L.Ed.2d 773 (1993), the Sixth Circuit reviewed a case under Title VII. The defendant asserted that after-acquired evidence of resume fraud was grounds for termination. Citing *Summers,* the court held that if the defendants could prove the plaintiff would have been terminated if the defendant had known of the fraud earlier, the plaintiff was barred entirely from relief. 975 F.2d at 304–05. In cases involving resume fraud, the Sixth Circuit has limited the *Summers* Defense to circumstances "where the misrepre-

sentation or omission was material, directly related to measuring a candidate for employment, and was relied upon in making the hiring decision." *Johnson v. Honeywell Information Systems,* 955 F.2d 409, 414 (6th Cir.1992), *reh. denied.*

The Seventh Circuit has endorsed a version of the *Summers* Defense in *Washington v. Lake County, Illinois,* 969 F.2d 250 (7th Cir.1992). The plaintiff there alleged violations of Title VII, 42 U.S.C. § 1981 and 42 U.S.C. § 1983. The defendant asserted a *Summers* Defense based on after-acquired evidence of resume fraud. The court held that after-acquired evidence of misconduct, fraud or otherwise, which would have caused the termination of the plaintiff had the defendant known of it, barred the plaintiff entirely from relief. 969 F.2d at 256.

While recognizing the *Summers* Defense, the Seventh Circuit has apparently limited the effect of the defense on the award of back pay. In *Smith v. General Scanning, Inc.,* 876 F.2d 1315 (7th Cir.1989), the Circuit suggested that the *Summers* Defense will only negate back pay for the period after the after-acquired evidence was obtained. 876 F.2d at 1319 n. 2 (stating in ADEA claim, "it would hardly make sense to order [plaintiff] reinstated to a job which he lied to get and from which he could properly be discharged. The same would be true regarding any back pay accumulation after the fraud was discovered."); *see Kristufek v. Hussmann Foodservice Co.,* 985 F.2d 364, 370–71 (finding, in ADEA claim, that defendant would not necessarily have fired plaintiff because of after-acquired evidence, but limiting plaintiff's back pay to that accumulated before discovery of after-acquired evidence), *reh. denied* (7th Cir.1993).

The Eleventh Circuit has adopted a more limited version of the *Summers* Defense. In *Wallace v. Dunn Construction Co.,* 968 F.2d 1174 (11th Cir.1992), the court reviewed a case brought under Title VII and the EPA. As a defense, the defendant relied on after-acquired evidence of resume fraud. The court held that if the after-acquired evidence would have caused the termination of the plaintiff, the plaintiff was barred from reinstatement and front pay. 968 F.2d at 1181.

With respect to back pay, the court stated that if the after-acquired evidence would not have been discovered but for the litigation, the evidence would provide no defense to an award of back pay. 968 F.2d at 1182. The court further stated that if the after-acquired evidence would have been discovered absent the litigation, back pay would be limited to that accrued before the evidence was discovered.[9] *Id.*

Only one district court in the Third Circuit has addressed the issue of after-acquired evidence. In *Massey v. Trump's Castle Hotel & Casino,* 828 F.Supp. 314 (D.N.J.1993) (Gerry, J.), the court considered an action under Title VII and the NJLAD. The defendant asserted a defense based on after-acquired evidence of misrepresentations on plaintiff's employment application. Considering the various formulations of the *Summers* Defense, the court arrived at a version it felt would "combine the most persuasive aspects of the Seventh and Eleventh Circuit" approaches. 828 F.Supp. at 325. The court stated that, "an employee's federal discriminatory discharge claim will not be barred by after-acquired evidence of that employee's misconduct. Such evidence, however, may preclude the award of front pay and reinstatement." 828 F.Supp. at 322. The court stated that the same version of the *Summers* Defense was applicable to the NJLAD claim. 828 F.Supp. at 325.

 Beneficial's assertion of the *Summers* Defense is not futile. In making this determination, it is not necessary to rule on the merits, extent or practical application of the *Summers* Defense in this case. It is merely necessary that Beneficial's assertion of the *Summers* Defense is not frivolous or "legally insufficient on its face." *Harrison Beverage,* 133 F.R.D. at 468. This determination has two elements: first, that the *Summers* Defense is a viable defense to Miller's discrimination claims; second, that Beneficial has pleaded sufficient facts to invoke the

*Summers* Defense in the instant case. *See Massarsky,* 706 F.2d at 125.

The *Summers* Defense is viable in this circuit. The Third Circuit has neither rejected nor limited the application of the *Summers* Defense in Federal discrimination claims; indeed, the Third Circuit has not even addressed the issue. Four other circuits have accepted the *Summers* Defense to varying degrees in Federal discrimination cases. *See supra* at 1002–1003. Under the most restrictive of these approaches, the *Summers* Defense was expressly recognized as an absolute defense to claims for front pay and reinstatement; the only restriction imposed on the *Summers* Defense related to its use against claims for back pay. *See Wallace,* 968 F.2d at 1181. Only one district court in the Third Circuit has addressed the *Summers* Defense. That court also recognized the validity of the *Summers* Defense in the context of front pay and reinstatement. *See Massey,* 828 F.Supp. at 322.

No New Jersey state court has addressed the validity of the *Summers* Defense under New Jersey discrimination law. There is therefore no apparent restriction, in law or logic, on the application of the *Summers* Defense in claims under the NJLAD.

The Amended Complaint in the instant case seeks "backpay, frontpay, compensatory damages, damages for psychological and/or emotional distress and/or humiliation ..." and that Miller be granted "full pension and other benefits...." Amended Complaint at 12. Even under the most restrictive of the circuits' approaches, the *Summers* Defense would be applicable to all of Miller's claims other than her claim for back pay. The same would be true under the approach used in *Massey.* In light of these circumstances, it would be premature and unwarranted to declare the *Summers* Defense futile in this circuit.

9. The First Circuit has also indicated that after-acquired evidence could be considered in evaluating a discrimination claim. In *Jimenez–Fuentes v. Torres Gaztambide,* 807 F.2d 230 (1st Cir.1986), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987), the court reviewed a district court's decision refusing to consider evidence acquired after the alleged discriminatory conduct. The court stated that the district court "erred in saying it would not consider matters coming to defendant's attention subsequent to the [allegedly discriminatory] demotion." 807 F.2d at 233. The court, however, held the error to be harmless. *Id.*

To succeed on the *Summers* Defense, Beneficial must eventually prove Miller engaged in conduct which was a basis for termination, and that Miller would have been terminated had Beneficial known of this conduct earlier during her employment. *See Summers,* 864 F.2d at 708. In determining whether Beneficial has pleaded sufficient facts to invoke the *Summers* Defense, it is only necessary that the court find Beneficial has created a triable issue as to the defense. *See Harrison Beverage,* 133 F.R.D. at 469. Therefore, the court must accept as true the allegations in Beneficial's Proposed Amendments, and construe them in the light most favorable to Beneficial. *See Kulwicki,* 969 F.2d at 1462; *Krohn,* 1993 WL 299268 at *4.

The Proposed Amendments allege, "[Miller's] claims are barred by her misrepresentation and fraud as to her resume and applications for health, death and pension benefits ... [and] as a result of her unauthorized removal of documents from Beneficial." Proposed Amended Answer at 10. Construing these pleadings, at this moment, in a light most favorable to Beneficial, it is reasonable to infer that Beneficial could, at trial, put forth proof that these acts would have caused Miller's termination if discovered earlier during her employment.[10] *See Kulwicki,* 969 F.2d at 1462 (in reviewing motion to dismiss, court looks only to pleadings "to see whether there is any set of facts [the pleader] can prove to support [his or her claim]"). Under the applicable standard, Beneficial has pleaded sufficient facts to create a triable issue as to the *Summers* Defense. Beneficial's Proposed Amendments are therefore not futile.

Miller argues futility is to be tested not only by reference to the pleadings, but also by reference to "relevant documents [and] items in the record."[11] Opp. Brief at 15. This does not appear to be the law in the Third Circuit. *See, e.g., Van Le,* 1992 WL 471246 at *2; *Harrison Beverage,* 133 F.R.D.

at 468. Moreover, even if the record were considered, the Proposed Amendments would still create a triable issue as to the *Summers* Defense.

The record is replete with evidence of Miller's misconduct. *See supra* at 995–998. Beneficial has therefore created at least a triable issue as to whether Miller engaged in this misconduct. Miller contends Beneficial will not be able to prove Miller would have been terminated had Beneficial known of her misconduct during her employment. Opp. Brief at 16–18. As support for this contention, Miller points out that Beneficial failed to terminate Miller, though it knew of her misconduct "long before" her resignation on 6 January 1989. Opp. Brief at 16. Miller further points out that after Miller's resignation, Hance twice wrote Miller offering to continue her employment at Beneficial. *Id.;* Schwartz Cert., Exs. M, N.

Miller is correct to the extent that the evidence shows Beneficial had some degree of knowledge of Miller's misconduct before her resignation. However, the evidence shows only that Beneficial had this knowledge as of 8 September 1988; this was only four months before Miller's resignation. 8 Sept. 1988 Memo. Indeed, the most concrete evidence of Beneficial's knowledge of Miller's misconduct is dated after her termination. *See* 1991 Oral Argument at 6 lines 12–17; Beneficial's Summary Judgment Brief at 4. This evidence does not bear on what Beneficial would have done had it known of Miller's misconduct before her resignation.

Beginning 19 September 1988, an internal investigation was being conducted regarding Miller's employment history at Beneficial. The evidence shows the Internal Investigation continued at least through 28 October 1988. *See* Schwartz Cert., Ex. L. It was entirely reasonable for Beneficial to decline

---

10. Beneficial did in fact argue in its Moving Brief that it would "demonstrate at trial that [Miller] would have been terminated had it learned she had misrepresented her age not only on her resume but also on her application for benefits." Moving Brief at 4.

11. For the proposition that relevant documentary evidence should be considered in determining

the futility of an amendment, Miller cites: *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.,* 933 F.2d 314 (5th Cir.1991); *Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037 (6th Cir.1991); *Roth v. Garcia Marquez,* 942 F.2d 617 (9th Cir.1991); *America West Airlines v. GPA Group, Ltd.,* 877 F.2d 793 (9th Cir.1989). Opp. Brief at 15.

to act against Miller until the completion of the Internal Investigation, and an analysis of its results. It was also reasonable for Beneficial to offer to continue Miller's employment until such time. Under the circumstances, Beneficial's actions do not prove that it would not have terminated Miller because of her misconduct if it had learned of the misconduct earlier. There is therefore a triable issue as to whether Miller would have been terminated if Beneficial had known of her misconduct earlier during her employment; Beneficial should be afforded the opportunity to prove its case at trial.

Granting Beneficial leave to amend the Answer would not have resulted in prejudice to Miller or caused undue delay. Moreover, Beneficial's Proposed Amendments would not be futile. Therefore, there existed no basis for Judge Cavanaugh to deny Beneficial leave to amend the Answer to include the Proposed Amendments. *See Foman,* 371 U.S. at 182, 83 S.Ct. at 230. Judge Cavanaugh's denial was "clearly erroneous and contrary to law." *Gomez,* 490 U.S. at 868, 109 S.Ct. at 2244. Accordingly, the 20 July 1993 Order is reversed to the extent that it denied Beneficial leave to amend the Answer.

## C. *Miller's Request for Sanctions*

Miller's request for sanctions is two-fold: First, Miller requests attorneys' fees and costs incurred in opposing Beneficial's motion to amend the Answer before Judge Cavanaugh (the "First Request for Sanctions");[12]

second, Miller requests attorneys' fees and costs incurred in opposing Beneficial's appeal of the 20 July 1993 Order (the "Second Request for Sanctions"). Opp. Brief at 22–23.

1. *Standard for Imposing Sanctions under Rule 11*

Rule 11 was amended in 1983 to give courts greater authority to impose sanctions in order to discourage wasteful and abusive tactics.[13] *See Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 542, 111 S.Ct. 922, 928, 112 L.Ed.2d 1140 (1991); *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990); *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 157 (3d Cir.1986). Thus, Rule 11 provides another exception to the traditional American rule requiring each litigant to bear its own costs and attorneys' fees. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); *Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 504 (3d Cir.1991); *Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191, 193 (3d Cir.1988); *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 483 (3d Cir.1987). The Rule's primary purpose in providing for an award of attorneys' fees, however, is not "wholesale fee shifting but correction of litigation abuse." *Gaiardo,* 835 F.2d at 483; *Quiroga,* 934 F.2d at 504.

Consequently, sanctions are appropriate only in exceptional circumstances,

12. Miller actually moved for sanctions on identical grounds before Judge Cavanaugh. Judge Cavanaugh denied this motion. *See* 20 July 1993 Order at 5. Miller's First Request for Sanctions should therefore have been made through a cross-appeal of the 20 July 1993 Order. Miller has not filed a cross-appeal in this matter. Nevertheless, Miller's First Request for Sanctions will be considered.

13. Rule 11 provides, in pertinent part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the party's pleading, motion, or other paper and state the party's address.... The signature of an attorney or party constitutes a certificate by the signer that

the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11.

such as when the " 'claim or motion is patently unmeritorious or frivolous.' " *Dura Systems, Inc. v. Rothbury Invest., Ltd.*, 886 F.2d 551, 556 (3d Cir.1989) (quoting *Doering*, 857 F.2d at 194), *cert. denied*, 493 U.S. 1046, 110 S.Ct. 844, 107 L.Ed.2d 838 (1990); *see also Landon v. Hunt*, 938 F.2d 450, 452 (3d Cir. 1991); *Napier v. Thirty or More Unidentified Fed. Agents, etc.*, 855 F.2d 1080, 1091 (3d Cir.1988); *Princeton Economics Group, Inc. v. AT & T*, 768 F.Supp. 1101, 1116 (D.N.J. 1991). Where an abuse of the judicial system is found, Rule 11 sanctions are appropriate against the signer of the document, be it the attorney or the party. *Business Guides*, 498 U.S. at 543–46, 111 S.Ct. at 929–31.

In deciding Rule 11 motions, the court must apply an objective standard of reasonableness under the circumstances existing at the time the paper was submitted. *Chambers*, 501 U.S. at ——, 111 S.Ct. at 2134; *Business Guides*, 498 U.S. at 548, 111 S.Ct. at 931; *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 541 (3d Cir.1985). This is "a more stringent standard than the original good faith formula." *Eavenson*, 775 F.2d at 540. No proof of subjective bad faith is required to levy sanctions. *Napier*, 855 F.2d at 1091. Thus, "the [R]ule requires a reasonable inquiry into both the facts and the law supporting a particular pleading." *Schering Corp. v. Vitarine Pharmaceuticals, Inc.*, 889 F.2d 490, 496 (3d Cir.1989).

"The court must evaluate the signer's conduct 'by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted,' an evaluation which should depend on a variety of factors, including 'whether the pleading, motion, or other paper was based on a plausible view of the law.' " *Dura Systems*, 886 F.2d at 556 (quoting Rule 11 advisory committee note). Under this standard, "[l]itigants misuse the Rule when sanctions are sought against a party or counsel whose only sin was being on

the unsuccessful side of a ruling or judgment." *Gaiardo*, 835 F.2d at 483.

Applying these principles to the instant case, Beneficial was not unreasonable in bringing its motion to amend the Answer. Indeed, its motion should have been granted. Sanctions pursuant to Rule 11 were unwarranted.

*2. Standard for Imposing Sanctions under 28 U.S.C. § 1927*

Section 1927 of Title 28 permits a district court to impose an award of costs, expenses and attorneys' fees reasonably incurred as a result of conduct of an attorney which "multiplies the proceedings in any case unreasonably and vexatiously." [14] 28 U.S.C. § 1927; see also *McDonald v. McCarthy*, 966 F.2d 112, 116 n. 2 (3d Cir.1992); *Alexander v. Primerica Holdings, Inc.*, 819 F.Supp. 1296, 1312 (D.N.J.1993). To impose attorneys' fees under section 1927, the court must make a finding of bad faith. *Hackman v. Valley Fair*, 932 F.2d 239, 242 (3d Cir.1991) (citing *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir.1986)). "Once a finding of bad faith has been made, the appropriateness of sanctions is a matter entrusted to the discretion of the district court." *Hackman*, 932 F.2d at 242.

In *Baker Industries, Inc. v. Cerberus, Ltd.*, 764 F.2d 204 (3d Cir.1985), the Circuit addressed the chilling effect of the imposition of sanctions. It stated: " 'To justify the imposition of excess costs of litigation upon an attorney his conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation. The section is directed against attorneys who willfully abuse judicial processes.' " *Id.* at 208 (quoting *Colucci v. New York Times Co.*, 533 F.Supp. 1011, 1014 (S.D.N.Y.1982)); *accord Hackman*, 932 F.2d at 242.

In *Chambers*, 501 U.S. ——, 111 S.Ct. 2123, the Supreme Court held that a district court has inherent power to impose sanctions

---

**14.** Section 1927 provides, in full:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

against parties for bad faith conduct. *Id.* 501 U.S. at ——, 111 S.Ct. at 2133–37. The Court explained that while statutory provisions for sanctions and attorneys' fees "reach[ ] only certain individuals or conduct, the inherent power extends to a full range of litigation abuses." *Id.* 501 U.S. at ——, 111 S.Ct. at 2134. Indeed, a court may impose sanctions pursuant to its inherent powers even if the conduct could be sanctioned pursuant to other procedural rules. *Id.* 501 U.S. at ——, 111 S.Ct. at 2135.

"A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Id.* 501 U.S. at ——, 111 S.Ct. at 2136. "[A] prerequisite for the exercise of the district court's inherent power to sanction is a finding of bad faith conduct." *Landon v. Hunt,* 938 F.2d 450, 454 (3d Cir.1991).

There is no evidence to suggest that Beneficial acted in bad faith in moving to amend the Answer. Beneficial sought to add defenses which it reasonably believed to be viable. *Compare Primerica Holdings,* 819 F.Supp. at 1312 (sanctions imposed where argument in contravention to well-settled law). The court has confirmed Beneficial's belief in this regard. Therefore, sanctions under 28 U.S.C. § 1927 were unwarranted in this case.

As sanctions were not appropriate under either Rule 11 or 28 U.S.C. § 1927, Judge Cavanaugh's denial of Miller's request for attorneys' fees and costs was neither clearly erroneous nor contrary to law. Accordingly, that part of the 20 July 1993 Order which denied Miller's request for sanctions is affirmed; Miller's First Request for Sanctions is denied.

For the same reasons that Judge Cavanaugh's denial of sanctions is affirmed, Miller's Second Request for Sanctions is denied.

*Conclusion*

For the reasons set forth above, the part of the 20 July 1993 Order which denied Beneficial leave to amend the Answer is reversed; Beneficial is granted leave to amend the Answer to include the Proposed Amend-

ments. Also for the reasons set forth above, the part of the 20 July 1993 Order which denied Miller sanctions is affirmed; Miller's request for sanctions in the instant appeal is denied.